## MAYER BROTHERS, APPELLANTS, VS. JOSEPH WILKINS, APPELLEE.

1. It is the established rule of this court that a general exception to a charge will not be good if the charge contains a single correct proposition of law applicable to the case, and also that an exception to a portion of a charge must be considered in connection with the remainder on the same subject, and if the charge, taken as an entirety, is free from the objection urged, the exception to a part can not be sustained.

2. Where a paragraph of a charge excepted to is complete in itself, presenting the case to the jury on one theory, and the paragraph contains an erroneous review of the law as applicable to the facts, the error will not be cured by another correct paragraph in the charge in the alternative, presenting another view of the case upon which a verdict could be rendered, where it can not be ascertained upon which view the verdict was rendered.

3. The trial judge may charge the jury as to the presumptions which the law by settled rule draws from given facts; but an inference of a fact, or the conclusion of the existence of a fact from some other fact or facts is drawn by the jury.

4. In case of fraudulent mixture of goods, and they are capable of identification and separation, it devolves upon the party whose wrongful act caused the confusion to separate and identify them, and if this can not be done, and the other party's rights be incapable otherwise of complete protection, the loss must fall upon the one fraudulently mixing the goods.

5. If personal property be bought and paid for by one person, and and the title by his direction is conveyed to another by the vendor, creditors of the person buying the property can not reach it by execution at law, but must seek relief in equity.

6. It is not error to refuse a charge, though correct as a legal proposition, based upon a state of facts not shown by the evidence to exist.

7. Goods purchased by one from an assignee for the benefit of creditors, with the knowledge that the assignment was fraudulent as to them, are liable to be taken on execution against the assignor, but goods bought by such purchaser with money

derived from those obtained from the assignee are not subject to levy under such execution.

8. The court refused the following charge, viz.: The party who asserts that the title did not pass by assignment as against him, must make such proof as will establish that proposition, and if he does not the presumption which the law indulges is that the vendee or assignee rightfully acquired possession of the property. It devolves on him who attacks the assignment to show not merely the fraudulent intent on the part of the assignor, but also the knowledge of and participation in such fraud by the person to whom, or in whose favor, such assignment was made in order to seize in his hands the goods so assigned; *Held.* that the charge, taken as an entirety, was wrong in that it confuses the rights of a *bona fide* purchaser without notice with a voluntary assignee who does not occupy the position of an innocent purchaser for value, and has no greater rights than the assignor.

9. *Held,* on the facts of the case, that it was error to refuse to give the following instructions asked, *viz.:* If the goods seized were in the possession of plaintiffs at the time of seizure, it is *prima facie* evidence that the ownership was in them, and it devolved upon defendant to establish the contrary.

Appeal from the Circuit Court for Escambia county.

The facts in the case are stated in the opinion of the court.

*John W. Malone* and *Mallory & Maxwell*, for Appellants.

*Blount & Blount*, for Appellees.

MABRY, C. J.:

The suit here is trespass, commenced by appellants against appellee for an alleged wrongful seizure and sale of personal property under an execution. The declaration alleges that plaintiffs were the owners and possessed of a stock of goods, wares and merchandise

situated in a building in Pensacola, Florida, of the value of $20,000, and that the defendant wrongfully, and with force and arms, pretending to act as sheriff, took possession of the goods and sold them on pretence of satisfying an execution issued under a judgment obtained in the Escambia Circuit Court in favor of A. Adler & Co. against R. Mayer and John Ellis, partners as Mayer & Ellis, to the damage of plaintiffs in the sum of $20,000. Other counts in the declaration alleging special damages by reason of the seizure and sale of the goods were stricken out on motion, but as no contention is made in this court that the action of the Circuit Court in striking out the counts was wrong, no reference need be made to them.

The pleas are: Not guilty; that the stock of goods did not belong to plaintiffs, but to R. Mayer & Co.; and that the goods were subject to levy under the execution against said firm. The judgment was in favor of defendant and plaintiffs appealed, which was before the adoption of the Revised Statutes.

Exceptions were taken to rulings of the court admitting testimony on behalf of defendant, but they are not relied on here. The errors assigned and insisted on in brief of counsel for appellants relate to charges given to the jury, and the refusal of the court to give certain charges requested by the plaintiffs. Appellants excepted to portions of the general charge of the court to the jury, and one portion excepted to and insisted on here as error is as follows: "On the other hand, if you believe from a preponderance of the evidence that in the Spring of 1885, R. Mayer, of the firm of R. Mayer & Co., and of the firm of Mayer & Ellis, and in the Fall of 1885, a short time before the said firm of Mayer & Ellis and R. Mayer & Co.

assigned to said Ollinger, made false representations to wholesale merchants of New York and other cities as to the amount of available assets or property the said firm then owned, and as to the amount of debts they were owing, and the amount of debts due to them, and obtained a large credit upon these representations, and that the said plaintiffs had knowledge of such representations by the assignors, of facts and circumstances connected with said assignment that by diligent inquiry they could have ascertained the circumstances under which said assignment was made, then the court charges you that the said assignment of said firms would be fraudulent and void as to creditors, and that plaintiffs would be bound by said fraud; the title to the property so assigned would remain in said firms of R. Mayer & Co. and Mayer & Ellis.'' In a paragraph immediately following the portion excepted to the court charged as follows: ''Or if you believe, from a preponderance of the evidence before you, that the said Mayer & Ellis and R. Mayer & Co. included in their said assignment to said Ollinger in October, 1885, debts as due and owing by them to parties whom they made preferred creditors under said assignment, which were not due and owing by them in whole or in part, and that the plaintiffs were among such preferred creditors, or had notice that the debts of others preferred were not *bona fide*, then said assignment was void and conferred no title on said Ollinger, and a sale by him of goods formerly belonging to R. Mayer & Co. embraced in said assignment, to the plaintiffs would confer no title upon them, the plaintiffs, and the goods would be subject to be levied upon to satisfy the said execution of Adler & Co. and others against Mayer & Ellis, and your

verdict should be for the defendant." Immediately preceding the paragraph excepted to the court charged the jury, in effect, that if they believed from the evidence ·that plaintiffs with their money purchased the goods from the assignee of Mayer & Ellis, that R. Mayer had no interest in the purchase, and that the assignment was not made on the part of Mayer & Ellis to hinder or delay their creditors in collecting their debts, within the knowledge of plaintiffs, the verdict should be in favor of the plaintiffs for what the goods levied on were reasnably worth. The theory of plaintiffs' case was that the goods levied on belonged to them, and not to the defendants in the execution that was levied by the sheriff. The defendants in this execution, R. Mayer and John Ellis, carried on a business at Milton, Florida, under the firm name of Mayer & Ellis, and also a business in Pensacola in the firm name of R. Mayer & Co., and on the 28th day of October, 1884, they made an assignment of both branches of business to Joseph Ollinger, the assignment containing several preferences in favor of persons as creditors, plaintiffs being among the number. The latter claimed, and testified to that effect, that they bought from the assignee, about the first of the year 1886, eleven or twelve thousand dollars' worth of the goods assigned to Ollinger, besides some real estate, and carried on business at both places named under the firm name of Mayer Bros.; that the business at Milton was transferred to Pensacola, it having been partially burned out, and that the business at the latter named place was going on when the levy was made, something over two years after their purchase from the assignee. It was shown that plaintiffs were in possession and

claimed to own the stock of goods when levied on, and their testimony tended to prove the goods to be worth between nineteen and twenty thousand dollars. Defendant's testimony tended to reduce this valuation. Both plaintiffs testified that they had disposed of the goods purchased from the assignee, with the exception of about five hundred dollars' worth, when the levy was made, and that the other portion of the stock consisted of goods purchased by them in the usual course of their business, with proceeds derived from the sale of goods.

The theory of the defense was that the assignment of R. Mayer and John Ellis was fraudulent in fact; that the purchase from their assignee by the plaintiffs was with knowledge on their part of the fraud, and that in fact and reality plaintiffs purchased for R. Mayer, who was their brother, and that he was the real owner of the goods at the time they were levied on by virtue of the execution against Mayer & Ellis.

The testimony is too voluminous to be set out in detail in this opinion, and only a statement of its bearing will be made in disposing of the assignments of error on the instructions given and refused. The testimony shows that about two months before the assignment was made, R. Mayer made statements in New York to merchants, as to the financial condition of the firms of which he was a member, and which he represented at the time in the purchase of goods. R. Mayer, who was introduced as a witness by the defendant, testified that he made such statements, which were in writing, but that no assignment was contemplated at the time, and that it was brought about by reason of the failure of his firm to realize on sales. The parties to whom the statements were

made were examined, and the statements put in evidence. They indicate that they were made by R. Mayer at the request of the merchants for their private information. The plaintiffs were younger brothers of R. Mayer, and had been in the employment of his firms as clerks for several years, and it was claimed that the preferences in the assignment in their favor were for wages due them as clerks. With the money received from the assignee under the assignment, and money claimed to have been borrowed from relatives who were also preferred creditors under the same instrument, plaintiffs claimed that they paid for the goods purchased from the assignee. It is not insisted by counsel for the appellee that the portion of the charge excepted to is correct. They claim that when taken in connection with other portions, the jury was not misled by it, and further, that it must be taken together with the paragraph immediately following as entirety, and the exception must be overruled because the charge considered as indicated contains a correct proposition of law. It is the settled rule in this court that a general exception to a charge will not be good if the charge contain a single correct proposition of law applicable to the case, and that an exception to a portion of a charge must be considered in connection with the remainder on the same subject, and if the charge, taken as an entirety, is free from the objection urged the exception can not be sustained. Smith vs. Bagwell, 19 Fla. 117; Pinson vs. State, 28 Fla. 735, 9 South. Rep. 706. The exception under consideration is to an entire paragraph, complete in itself, and it presents to the jury one view of the case upon which they should find for the defendant. The paragraph following the one excepted to is in the al-

ternative, and presents another view of the case upon which a verdict could be rendered in favor of defendant. If plaintiffs had made a general exception to both paragraphs, and either one contained a correct proposition of law, such exception would be bad, but the exception is to one paragraph, complete in itself, and if it contain an erroneous view of the law, the exception must prevail unless corrected by other portions of the charge, or the error be counteracted by some other feature of the case. We are not called on to pass judgment upon the portion of the charge immediately following the paragraph excepted to, and it may be conceded, as claimed by counsel for appellee, to be correct. Its correctness, however, does not, in our judgments, remove the exceptions to the paragraph excepted to, and which presents the case on a different basis of finding from that contained in the paragraph here conceded to be correct. In the portion of the charge objected to the court stated, in effect, that the assignment was void as to creditors on account of fraud, and plaintiffs would be bound by it if the jury believed, from a preponderance of the evidence, that R. Mayer, in the Spring of 1885, or in the Fall of that year, and a short time before the assignment was executed, made false representations as to the financial condition of his firms, and obtained credit upon such representations, and that plaintiffs had knowledge of such representations, or of facts and circumstances connected with the assignment that by diligent inquiry they could have ascertained the circumstances under which it was made. The only facts and circumstances tending to avoid the assignment of which plaintiffs had knowledge, or by diligent inquiry they could have ascertained, as submitted by

the charge, are the false representations made by R. Mayer a short time before the assignment was made. There is no direct testimony that plaintiffs had knowledge of the representations made by R. Mayer in New York, and aside from their connection as clerks with the firms of Mayer & Ellis, there is no basis for the conclusion that they knew of the representations. The charge not only directs a finding against plaintiffs if they knew of the representations, but if by diligent inquiry they could have ascertained them. They were at the time under no duty, so far as it appears, to ascertain what representations had been made by R. Mayer, and the charge is subject to criticism in submitting such a view to the jury. Seavy vs. Dearborn, 19 N. H. 351. But independent of this the charge was, in our judgment, wrong in assuming as a conclusion from the fact that R. Mayer made the false representations mentioned a short time before the assignment was made that it was fraudulent. In speaking of the charge of the trial court on the evidence under our system we said, in Pinson vs. State, *supra*, not only is the trial judge prohibited from charging the jury directly as to the sufficiency or weight of the evidence, or from assuming in his charge that certain facts in issue are proven, but he can not draw an inference or presumption of fact from the evidence. He may charge as to the presumptions which the law by settled rule draws from given facts, but an inference of a fact, or the conclusion of the evidence of a fact from some other fact or facts is already drawn by the jury who are the triers of the questions of fact. It may be proper for a jury in reaching a conclusion as to whether an assignment was made with a fraudulent intent to con-

sider the conduct and delarations of a party under
circumstances similar. to those surrounding R. Mayer
when he bought the goods in New York just before
the assignment was made by his firms, but the ques-
tion of a fraudulent intent under such circumstances
is one for the jury, and not for the court. The court
in the charge in this case does not connect, or leave
the jury to find any connection, between the false
representations and the assignment subsequently
made, notwithstanding there was positive testimony
that the assignment was not contemplated when the
statements were made. The charge, in our opinion,
is clearly wrong.

Appellants insist that the following charge given at
the request of defendant was error: "If you find from
the evidence that Mayer & Ellis made a fraudulent
assignment of the stock of goods to Joseph Ollinger, as
assignee, and that the plaintiffs knew that the assign-
ment was fraudulent, and with such knowledge pur-
chased the goods from Ollinger and mingled them
with goods purchased by them from other persons, so
that they could not be separated therefrom, and that
after such mingling, defendant, as sheriff, and under
a writ of execution against Mayer & Ellis levied upon
the whole, and that the levy was not excessive, he
would be justified in such levy, and would not be re-
sponsible therefor to the plaintiffs." It was held in
Wright vs. Skinner, 34 Fla. 453, 16 South. Rep. 335,
that in order to justify a forfeiture of goods because
of an intermingling of them with the goods of an-
other, two things must concur: first, that the party
whose goods are claimed to be forfeited must have
fraudulently and wilfully caused the confusion, and,
second, the rights of the other party after the con-

fusion must be incapable otherwise of complete protection. In case of fraudulent mixture of goods, and they are capable of identification, it seems there may be a separation of them; but it devolves upon the party, whose wrongful act caused the confusion, to separate and identify the goods so mingled, and if he can not do so, the loss must fall upon him. In 2 Kent's Commentaries, 364, it is stated that "with respect to the state of a confusion of goods, where those of two persons are so intermixed that they can no longer be distinguished, each of them has an equal interest in the subject as tenants in common, if the intermixture was by accident. But if it was wilfully made without mutual consent, then the civil law gave the whole to him who made the intermixture, and compelled him to make satifaction in damages to the other party for what he had lost. The common law gave the entire property, without any account, to him whose property was originally invaded, and its distinct character destroyed. * * But this rule is carried no further than necessity requires; and if the goods can be easily distinguished and separated, as articles of furniture, for instance, then no change of property takes place." The rule is fully discussed in cases cited in note to Jewett vs. Dringer, 30 N. J. Eq. 291; 1 Sutherland on Damages, p. 160 and notes. The property levied on in the present case consisted of goods and merchandise usually kept in a general mercantile business, and on the facts of the case we are of the opinion that the charge was not improper. It submitted to the jury the view that if the assignment from Mayer & Ellis to Ollinger was fraudulent, and with knowledge of this fact plaintiffs bought goods from the assignee and mingled them with other

goods purchased from other parties so that they could not be separated, the entire stock was liable to be taken on execution against the fraudulent assignors. The purchase of goods from the assignee with knowledge of the fradulent purpose for which they were assigned and the mingling of them with other goods would place plaintiffs in the position of parties fraudulently mixing goods.   Seavy vs. Dearborn, *supra.*

A charge requested by plaintiffs, but refused by the court, and the refusal insisted on as error is as follows: "If you believe from the evidence that the defendant, on or about the —— day of February, 1887, under an execution in favor of A. Adler & Co. vs. Mayer & Ellis, levied on and sold a stock of goods and merchandise which was bought by plaintiffs with money of R. Mayer, but the title thereto was taken in the name of plaintiffs, then said goods and merchandise were not subject to levy under said execution, and you should find for the plaintiffs."   It was sought by this charge to invoke the established rule in this State, that when real estate is purchased with the money of one person and the deed taken in the name of another for the purpose of defrauding the creditors of the former, a trust results in his favor which can only be reached by resort to equity.   The title never having been in the debtor whose money went to pay for the land, it is not subject to levy under an execution at law, and can only be reached in equity.   That this is the rule in this State as to real estate is settled in Robinson vs. Springfield Company, 21 Fla. 203.   Should the same rule prevail as to personal property?   Counsel for appellee say that it does not.   It is not contended that the facts of the case did not warrant such an instruction if good, and

the question presented is whether it was correct as a legal proposition. We have been impressed with the view that in consequence of the different natures of real and personal property, and the evidence of title required by the law as to each, the rule as to land should not be applied to personal property; but we have been unable to find this view sustained by the weight of authority. In discussing the rule as to real estate Mr. Wait says (sec. 57, Fraudulent Conveyances and Creditors' Bills) that "it may be observed that a purchase of personal property by a debtor in the name of a third party does not exempt it from direct seizure by creditors." He cites the case of Godding vs. Brackett, 34 Maine, 27, which sustains the text, though the opinion is short and contains no discussion of the subject. Some American decisions do not hold to the view announced in reference to real estate, but make real estate purchased with money of one liable to direct seizure under execution; and in some States there are statutes regulating the subject. Maine has a statute on the subject. In dealing with personal property subject to execution, Freeman on Executions, sec. 136, states the rule to be that "where a debtor has fraudulently conveyed his property, it may be taken on execution against him, because, in favor of his creditors, he is still considered as the owner of the legal as well as the equitable title. But when he has fraudulently bought property, and had the title taken in the name of another, the circumstances are different, though the object is the same. * * This legal title can not be reached by levy of an execution against the debtor, because he has never owned it. The creditor must, therefore, resort to equity, except in a few States, where statutes have

been enacted to enable them to reach it at law."
Where the debtor has never had the title of either
real or personal property, the statute of Elizabeth,
known as the statute of frauds, does not apply, al-
though the principles of the common law, of which
the statute was in part declaratory, will enable a cred-
itor to reach the property of his debtor held in trust
for him. The following cases hold expressly that if
personal property be bought by one person, and the
title is, at his instance, conveyed to another by the
vendor, creditors of the purchaser can not reach the
property by execution at law, but must seek relief in
equity: Gray vs. Faris, 7 Yerger, 154; Childs vs.
Derrick, 1 Yerger, 79; Parris vs. Thomson, 1 Jones
(Law), 57; Garrett vs. Rhame, 9 Richardson, 407, S.
C. 67 Am. Dec. 557. This seems to be the prevailing
view. Other decisions hold that in the absence of
statutory authority, an equity in personal property
is not subject to be taken on execution at law. Har-
ris vs. Alcock, 10 Gill & J. 226, S. C. 32 Am. Dec.
158; Rose vs. Bevan, 10 Md. 466, S. C. 69 Am. Dec.
170.

Another charge requested by plaintiffs, and refused
by the court, asserts that if the defendant levied the
execution mentioned on a stock of goods that belonged
to plaintiffs and R. Mayer as partners, the jury should
find for plaintiffs on the ground that the goods were
not subject to such levy. There was no testimony to
authorize this charge, to say nothing of its correctness.
All of plaintiffs' testimony was to the effect that they
owned the goods as partners, and that R. Mayer had
no interest in them. Upon their theory there was no
foundation for the assumption that R. Mayer was a

partner in the business; and defendant's testimony did not justify the view that R. Mayer was jointly interested in the goods as partner. On the testimony it is not necessary to discuss the law as to the right to levy on partnership goods under an execution against one of the partners.

The court refused the following charge requested by plaintiffs: "If you believe from the evidence that the plaintiffs bought of J. Ollinger, as assignee of Mayer & Ellis and R. Mayer & Co., goods and merchandise, and that at the time of such purchase A. Adler & Co. were creditors of Mayer & Ellis, and that as to them said purchase was fraudulent and void, and that said plaintiffs sold said goods and merchandise, and with the proceeds arising from the sale purchased other goods and merchandise, which were levied on and sold by the defendant under an execution in favor of A. Adler & Co. vs. Mayer & Ellis, then the said levy was illegal, and you should find for plaintiffs." Plaintiffs' proof tended to show that something over two years before the levy was made they purchased goods from the assignee of Mayer & Ellis, and commenced business under the firm name of Mayer Bros.; that the stock when levied on was worth between nineteen and twenty thousand dollars, and that about five hundred dollars' worth of the goods levied on consisted of the goods bought from the assignee, and the balance had been purchased in the usual course of business from merchants with money arising from the sale of goods. Conceding that the assignment of Mayer & Ellis to Ollinger was fraudulent as to creditors, and that the goods purchased by plaintiffs from him were subject to be levied on under an execution in favor of a creditor, the goods purchased by plaintiffs with money derived

from the sale of those obtained from Ollinger would not be subject to levy under the execution. The goods purchased from Ollinger having been once the property of the firm of Mayer & Ellis, and fraudulently assigned, would be liable to be taken on execution, but this would not be the case with goods procured from third parties, though with the proceeds arising from the sale of the fraudulently assigned goods. Post vs. Bird, 28 Fla. 1, 9 South. Rep. 888. This charge contains a correct proposition of law, and in view of other charges given for defendant, and especially the one in reference to the mingling of the goods in the stock, should have been given. Although the jury might have concluded that the plaintiffs purchased goods from the assignee with knowledge of the fraudulent purpose in the assignment, yet if the goods so purchased and on hand at the time of the levy were capable of separation and identification, only so much was liable to be taken on execution.

Another charge refused states that if the jury believed from the evidence that the assignment to Ollinger was fraudulent, but plaintiffs did not participate in it, and did not know of the fraud when they purchased the goods, and that they paid for them what they were worth, the verdict should be for plaintiffs. The court had already charged for the plaintiffs that fraud would not be presumed, but must be proved, and that if the jury believed from the evidence that the assignment to Ollinger was fraudulent and void as to Adler & Co., but that plaintiffs were *bona fide* purchasers from him without knowledge of the fraud, they should find for plaintiffs. Taking the entire charges together, the court fully covered the charge requested and refused, and we see no ground for complaint on

the part of plaintiffs in the refusal to give the charge in question.

The court also refused to give the following charge requested by plaintiffs: "The party who asserts that the title did not pass by assignment as against him, must make such proof as will establish that proposition. If he does not, the presumption which the law indulges is that the vendee or assignee rightfully acquired possession of the property. It devolves on him who attacks the assignment to show not merely the fraudulent intent on the part of the assignor, but also the knowledge of and participation in such fraud by the person to whom, or in whose favor such assignment is made, in order to seize in his hands the goods so assigned." Considering the charge as an entirety it was properly refused. The charge confuses the rights of a *bonâ fide* purchaser without notice, and a voluntary assignee. Such assignee can have no greater rights than the assignor, and does not occupy the position of an innocent *bona fide* purchaser. Campbell Printing Press & Manuf'g Co. vs. Walker, 22 Fla. 412; 1 South. Rep. 59; Einstein's Sons vs. Shouse, 24 Fla. 490, 5 South. Rep. 380. Without examining the correctness of the charge in other respects, it is bad for the reason stated, and being bad in part, it was properly refused.

The only remaining charge refused, and insisted on here, necessary to be considered on the brief filed, is the following: "If the goods seized were in the possession of plaintiffs at the time of seizure, it is *prima facie* evidence that the ownership was in them, and it devolves upon defendant to establish the contrary." Possession of personal property under claim of ownership is *prima facie* evidence of such right, and the

charge on the facts of this case states the law correctly.

The court in the beginning of its charge to the jury stated that if they believed from the evidence that defendant, as sheriff, levied the execution in favor of Adler & Co. against Mayer & Ellis upon the stock of goods claimed in the declaration as the property of plaintiffs, then they should determine, from a preponderance of the evidence, in whom the title of the property was in fact vested at the time of the levy. This portion of the charge did not state upon whom the burden of proof rested in showing title. The charge refused correctly stated the law and was applicable to the facts of the case, and in connection with what was said in reference to proving title in the property, plaintiffs were entitled to have the jury instructed as to their *prima facie* evidence of ownership resulting from possession under claim of right.

In this opinion we confine ourselves to the consideration of charges excepted to and insisted on here, involving all the matters that demand discussion on the brief of counsel for appellants. For the error pointed out the judgment must be reversed, as we can not say that the misdirection of the court did not influence the result of the verdict. Counsel for appellee insists that upon the entire record the judgment should be affirmed, notwithstanding some of the court's rulings on the charges may not be strictly correct, but where error in the directions of the court is shown, injury is presumed, unless it affirmatively appear that such was not the case.

An order will be entered reversing the judgment and directing a new trial.