J. T. McCARTY, Appellant,

v.

Gus GAPPELBERG, Appellee.

No. 15559.

Court of Civil Appeals of Texas.

Fort Worth.

Nov. 26, 1954.

Rehearing Denied Dec. 31, 1954.

Caldwell, Baker & Jordan, and Russell M. Baker, Dallas, for appellant.

Strasburger, Price, Kelton, Miller & Martin, and Royal H. Brin, Jr., Dallas, for appellee.

MASSEY, Chief Justice.

From an adverse judgment in a personal injury case, the plaintiff appealed. A take-nothing judgment was returned upon a jury verdict convicting the plaintiff of contributory negligence.

Judgment reversed and remanded.

The question posed by this appeal is whether proof is admissible to show a history of intemperate habits on the part of a plaintiff in the absence of any competent evidence raising an issue as to whether he was intoxicated at the time of the occurrence of the accident in which he sustained injuries, and/or in the absence of competent evidence raising an issue as to whether his injuries and their results were affected by such prior intemperate habits.

We believe that the law is well settled to the effect that in so far as such character of evidence is concerned, as it relates to the occurrence of the accident, it may not be received where there is no dispute as to the injured person's condition of sobriety at the time of his accident. In other words, if he admits that he was intoxicated at the time of his accident, the defendant could not introduce evidence bearing upon his antecedent intemperate habits just as could not be done if he was indisputely sober at the time. Evidence bearing upon the plaintiff's antecedent intemperate habits is generally inadmissible in the absence of additional proof, by way of connecting facts or circumstances, that such habits have a relevancy bearing upon such a person's physical condition at the time of his accident. 61 C.J.S., Motor Vehicles, § 516, sub. (2), Intoxication, page 250; 17 Tex.Jur., "Evidence", p. 412, sec. 147, "Intoxication"; Texas Midland R. Co. v. Wiggins, Tex.Civ.App.Dallas 1913, 161 S.W. 445, error refused; Tripp v. Watson, Tex.Civ.App.Fort Worth 1950, 235 S.W.2d 677, writ refused, n. r. e.; Texas & N. O. R. Co. v. Diaz, Tex.Civ.App.Beaumont 1921, 234 S.W. 919, error dismissed; Galveston, H. & S. A. Ry. Co. v. Davis, 1898, 92 Tex. 372, 48 S.W. 570; Mason v. Missouri, K. & T. Ry. Co. of Texas, Tex.Civ.App.Dallas 1912, 151 S.W. 350; Browne v. Bachman, 1903, 31 Tex.Civ.App. 430, 72 S.W. 622;

Traders & General Ins. Co. v. Boysen, Tex.Civ.App.Beaumont 1939, 123 S.W.2d 1016, error dismissed, judgment correct.

We believe that the law is well settled that such character of evidence may be received where an issue of fact is made as to whether such a plaintiff was intoxicated at the time of his accident. In other words, if he or other witnesses testify that he was sober at the time of the accident, while other witnesses testify that he was in a state of intoxication, then the defendant would be entitled to introduce evidence showing that the plaintiff was habitually intoxicated, or a drunkard. The evidence of antecedent intemperate habits would not be direct evidence upon the actual issue (viz.: was plaintiff intoxicated at the time he was injured?), but would be evidence tending to substantiate the defendant's other proof bearing upon the plaintiff's intoxication at the material time of his accident by way of corroboration. 17 Tex.Jur., "Evidence", p. 412, sec. 147, "Intoxication", and p. 416, sec. 149, "Habit"; McCormick and Ray, Texas Law of Evidence, p. 881, sec. 685, "Intoxication"; Robinson v. Lovell, Tex. Civ.App.Galveston 1951, 238 S.W.2d 294, writ refused, n. r. e., and authorities therein cited.

In the instant case the plaintiff was a pedestrian and was struck by the automobile of the defendant as he crossed a street in the "crosswalk". Evidence was permitted of introduction over the strenuous objections of the plaintiff relating to his antecedent history of intemperate habits, including arrests and convictions for drunkenness. Indeed, the state of the record clearly demonstrates that the jury who heard the evidence in the case was adequately informed that plaintiff, prior to the date of his accident, was frequently found in a drunken condition in public places. The plaintiff, through his counsel, adequately protected himself for appellate purposes upon his objections to the admissibility of this testimony. All of plaintiff's own testimony was to the effect that he was in a state of sobriety on the evening of his accident. Defendant offered the witness Harley Eugene Myers, the first-aid man on the ambulance which took plaintiff from the scene of the accident to the hospital. Questions asked and answers elicited from this witness on direct examination included the following:

"Q. Did you smell anything on his breath? A. I didn't particularly notice it then. In the ambulance I smelled something.

"Q. What did you smell? A. Well, it apppeared to be alcohol of some kind. I couldn't say what it was.

"Q. Whiskey or beer or wine or something, is that it? A. Well, it could be something.

"Q. You had smelled alcohol before, had you not? A. Yes, sir.

"Q. During the course of your ambulance work, you have had occasion to pick up quite a few people who have smelled of alcohol, have you not? A. That is right.

"Q. In other words, you are familiar with the smell of alcohol? A. Yes, sir.

"Q. You say you could smell alcohol? A. The ambulance was a pretty close place in there. I had never met the man before or anything, but I did smell alcohol in the ambulance.

"Q. What are your duties when you get in the ambulance with the patient? A. To stop all of the bleeding and help him in any way that I can.

"Q. You are pretty close to him? A. Yes.

"Q. And you smelled alcohol at that time? A. Yes.

"Q. You smelled alcohol all the time until you got to Parkland Hospital? A. Well, I was working off and on on the man and naturally you are going to be working on him, you

are going to be a little closer to him than you are the other time.

"Q. During that time you could smell beer, whiskey, or alcohol, some kind of intoxicant? A. I wouldn't say what it was, because I don't know.

"Q. Some kind of intoxicant? A. I would say I smelled some kind of alcohol."

It is defendant's contention that the aforesaid testimony constituted direct testimony that plaintiff was intoxicated at the time of the accident, and that therefore the defendant's evidence bearing upon plaintiff's antecedent intemperate habits was admissible as tending to substantiate the witness Myers' testimony. But it appears to us that Mr. Myers pointedly avoided testifying that the plaintiff was intoxicated, or that he had alcohol on his breath. Direct questions were asked other witnesses as to whether plaintiff had alcohol on on his breath and testimony was received to the effect that such witnesses did not detect any such odor. It was also established by the evidence that a fluid was carried in the ambulance which contained alcohol and which was used in connection with patients transported by the ambulance. There was no evidence as to whether or not the container for this fluid was capped, no evidence as to whether it was used upon the plaintiff as he was being transported in the ambulance, and no evidence bearing upon any use of it on any patient or patients transported in the ambulance earlier in the day. Under these circumstances, we believe that Mr. Myers' testimony fell short of amounting to proof of probative force and effect that the plaintiff was intoxicated upon the material occasion. Therefore, in so far as the facts of the occurrence of the accident are concerned, the defendant did not establish the predicate which was necessary to be established as a predicate for the admission of any testimony relating to the plaintiff's antecedent intemperate habits.

■ As applied to the instant case, we see no merit in the defendant's contention that the same character of evidence is ad-

missible upon the measure of damages and in mitigation of the damages because a plaintiff who is habitually intoxicated, or a drunkard, would not have as great an earning capacity as one who was of sober habits or would not have as much life expectancy. We are not convinced that the fact that a person is of intemperate habits is, in itself and of itself, evidence tending to establish less ability to earn money or a diminished earning capacity. Neither are we convinced that such a fact is, in itself and of itself, evidence tending to establish a reduced life expectancy.

■ There is no question but what (in a suit for damages) testimony establishing that a person who has been injured or killed was of sober habits may be admitted as tending to substantiate the damages sought for lost earnings, etc. Texas Mexican Ry. Co. v. Douglass, 1889, 73 Tex. 325, 11 S.W. 333; Beaumont Traction Co. v. Dilworth, Tex.Civ.App.1906, 94 S.W. 352; Ft. Worth & D. C. Ry. Co. v. Stalcup, Tex.Civ.App. Amarillo 1914, 167 S.W. 279, error refused. We believe, however, that such evidence is not admissible to establish such damages. Such evidence, in itself and of itself, would not establish damages. Furthermore, it does not necessarily follow that the converse would be true, that a defendant might show that the plaintiff had intemperate habits or was addicted to intoxication as evidence mitigating the plaintiff's damages. We believe that evidence of this character should be excluded in the absence of some issue of fact otherwise raised and bearing upon the damages, in substantiation of which the plaintiff's antecedent habits might become admissible. Houston, E. & W. T. Ry. Co. v. McCarty, 1905, 40 Tex. Civ.App. 364, 89 S.W. 805; St. Louis & S. F. R. Co. v. Smith, 1904, 34 Tex.Civ.App. 612, 79 S.W. 340, error refused; 14 Texas Digest, Damages, ☞169.

In the instant case there is no contention that the plaintiff's physical condition is resultant in any respect from plaintiff's antecedent living habits or vices. Neither is there any evidence thereof, or that the plaintiff's future earning prospects or life

expectancy is diminished for any reason other than his injuries. If his antecedent intemperate habits actually will militate against him in the respects with which we must here concern ourselves, one would necessarily enter the realm of speculation and conjecture in order to find that it would, or to further find a degree of militation.

■ Certainly the testimony about plaintiff's addiction to the use of alcohol prior to the occasion in question would be calculated to prejudice the minds of the jury. The damage mitigation, that the defendant contends was thereby tended to be shown, is too remote. There is no direct evidence as to whether the plaintiff has or will suffer any loss in his earning capacity as result of his vices. The prejudicial nature of the evidence requires its exclusion under general rules. See McCormick and Ray, Texas Law of Evidence, pp. 879, 881, secs. 683, 685; Wigmore on Evidence (Third Ed.), secs. 65, 96; Stone v. Day, 1887, 69 Tex. 13, 5 S.W. 642, 5 Am.St.Rep. 17; St. Louis & S. F. R. Co. v. Smith, supra; Houston, E. & W. T. Ry. Co. v. McCarty, supra.

In stating the above as our conclusion we have not ignored defendant's case of Cameron Mill & Elevator Co. v. Anderson, 1904, 98 Tex. 156, 81 S.W. 282, 1 L.R.A., N.S., 198, by Chief Justice Gaines. Judge Gaines makes a statement to the effect that a defendant ought to be permitted to prove what we have here held he may not prove. Examination of that case discloses that the statement was dicta. The actual holding was that the plaintiff in a personal injury case may offer evidence of the habits of industry and sobriety on the part of the person injured as tending to substantiate the damages sought. Neither have we ignored 9 A.L.R. 1405 and the cases there annotated and the author's statement that proof of an injured person's intemperate habits may affect the damages sustained by him or his next of kin in (1) accounting for his suffering or physical condition, (2) decreasing his earning capacity, (3) shortening his life expectancy, and (4) lessening his use-

fulness to and protection and support of his family. With such author's reasoning we agree. However, it is not our interpretation of the cases that the weight of authority has established that in any one of these instances proof of the injured person's intemperate habits, per se, constitutes proof at all, or that such evidence, unaided by anything by way of a predicate therefor, or in supplement thereof, is relevant and material evidence upon the matter of damages.

From the authorities cited and our own reasoning we believe that the trial court committed an error of law in the course of the trial in permitting the defendant to introduce and develop the testimony. In view thereof we examine such error in the light of the whole record in a determination of the question of whether it was harmless or whether it was error which will require a reversal.

■ Under provisions of Texas Rules of Civil Procedure, rule 434, "no judgment shall be reversed on appeal * * on the ground that the trial court has committed an error of law in the course of the trial, unless the appellate court shall be of the opinion that the error complained of amounted to such a denial of the rights of the appellant as was *reasonably calculated to cause and probably did cause* the rendition of an improper judgment in the case, * * *." (Emphasis ours.)

The meaning thereof has been held to cast upon a complaining party the burden of showing at least that the error probably resulted to his prejudice. Golden v. Odiorne, 1923, 112 Tex. 544, 249 S.W. 822, 823; Texas Power & Light Co. v. Hering, 1949, 148 Tex. 350, 224 S.W.2d 191. The determination on this score by the appellate court will be made from the record as a whole. See the numerous cases cited in Texas Power & Light Co. v. Hering, supra, 224 S.W.2d at pages 192 and 193. While we are not convinced that but for the admission of the testimony in question the jury would have returned a different verdict by answering the issue differently, we must remember that the Rule's intent and purpose is *not to require that the complain-*

*ing party demonstrate that but for the error a different judgment would have resulted.* Texas Power & Light Co. v. Hering, supra.

It follows that the complaining party has shown reversible error when it is made to appear that he has been harmed by the error in that a finding of fact against him was controlled by, or probably resulted in whole or in part because of, the admission of the prejudicial testimony. Stated in different words: If the erroneously admitted testimony had such force as would be reasonably calculated to have effected the jury finding in question, the complaining party has suffered harm through the error and he is entitled to a reversal on appeal.

We believe that in this case the admitted testimony must be deemed to have been a probable cause of the jury's finding that the plaintiff was guilty of contributory negligence in failing to keep a proper lookout. That there was other evidence which would probably have caused the same finding would not eliminate the fatality of the error, at least in this case. This being true, and the finding having been a basis of the judgment entered against plaintiff, reversible error is demonstrated.

An informative case on the point is the case of Ligon v. Green, Tex.Civ.App.Fort Worth 1947, 206 S.W.2d 629, error refused, n. r. e. In that case the evidence erroneously received by the jury was evidence which would have tended to influence the jury to refuse to find negligence on the part of the defendant, in whose behalf it was admitted. The court held that since the jury found the defendant negligent, the error in its reception would be harmless and that the contributory negligence found against the plaintiff would defeat him, as a negligent finding against him was not calculated to be effected by such evidence. In the instant case the evidence admitted would have tended to influence the jury to find contributory negligence against the plaintiff, and it did find contributory negligence against him in finding that he failed to keep a proper lookout. In the Ligon v. Green case the erroneous jury finding that the evidence was calculated to effect was not found and therefore there was no harm. Here the finding that the evidence was calculated to effect was actually found. Therefore there was reversible error under the provisions of T.R.C.P. 434.

The two remaining points urged by the plaintiff have been carefully considered and are overruled. In one instance the error urged is unlikely to recur upon another trial. In the other instance the plaintiff contends that since he had the right of way as a pedestrian at a crosswalk he had no duty to keep a lookout for the defendant's approaching automobile. We believe that the law is settled to the contrary. See Brown v. Dallas Ry. & Terminal Co., Tex.Civ.App.Amarillo 1949, 226 S.W.2d 135, error refused; Lofland v. Jackson, Tex.Civ.App.Amarillo 1950, 237 S.W.2d 785, writ refused, n. r. e.; Norris Bros. v. Mattinson, Tex.Civ.App.Fort Worth 1940, 145 S.W.2d 204; Checker Cab Co. v. Wagner, Tex.Civ.App.El Paso 1946, 199 S.W.2d 791; and see 79 A.L.R. 1073, 1082; Southland-Greyhound Lines, Inc., v. Richardson, 1935, 126 Tex. 118, 86 S.W.2d 731; Tidy Didy Wash v. Barnett, Tex.Civ.App.Galveston 1952, 246 S.W.2d 303, writ refused, n. r. e.; Stehling v. Johnston, Tex.Civ.App. San Antonio 1930, 32 S.W.2d 696, error refused; and see 89 A.L.R. 838 and 136 A.L.R. 1497.

The judgment is reversed and the cause remanded.