WILLSON, J. H., Associate Judge
(dissenting).
I am unable to concur in the decision to reverse the judgment in this case and respectfully dissent.
The facts are set out in Judge Walden’s opinion, which is a model of conciseness *839 and clarity. The facts present two questions: (1) Was Laken’s testimony that appellant said he had “a problem” admissible? and (2) if inadmissible was its reception harmful error?
The jury could have inferred from Laken’s testimony that appellant’s “problem” was one of intoxication, that he “was a habitual and long-time user of alcoholic beverages;” and it may be assumed, in order to give him the benefit of every reasonable doubt, that it did so infer. In the light of this assumption was the testimony admissible ?
The majority opinion sees Laken’s testimony as an attack on appellant’s character. In my view it relates to his habit of intoxication. Habit, character and reputation are closely related terms and are not always properly distinguished from each other.
“Habit” is an aptitude or inclination for some action acquired by frequent repetition and showing itself in increased facility of performance or in decreased power of resistance. Webster’s International Dictionary (2d ed.) McMurtry v. State Board of Medical Examiners, 1960, 180 Cal.App. 2d 760, 4 Cal.Rptr. 910; In re Masters, 1956, 165 Ohio 503, 137 N.E.2d 752. “When we speak of the habits of a person, we refer to his customary conduct, to pursue which he has acquired a tendency from frequent repetitions of the same act.” Knickerbocker Life Ins. Co. v. Foley, 1882, 105 U.S. 350, 354, 26 L.Ed. 1055, 1057.
“Character” is “that by which a thing is specially known or distinguished; a quality, a property, a distinctive feature.” Herlihy Mid-Continent Co. v. Sanitary District of Chicago, 1945, 390 Ill. 160, 60 N.E.2d 882. It is what a person really is. State v. Feni-more, 1942, 42 Del. 183, 29 A.2d 170. Habits are one determining factor in the formation of character.
“Reputation” is what the people generally think and state about a person. Lutz v. State, 1943, 146 Tex.Cr.R. 503, 176 S.W.2d 317; People v. Paisley, 1963, 214 Cal.App. 2d 225, 29 Cal.Rptr. 307. It is the community’s opinion of one’s character, Fine v. State, 1915, 70 Fla. 412, 70 So. 379, which, in part, has been formed by one’s habits or customs.
“ ‘Character’ is distinct from reputation,” Fine v. State, supra; Hassell v. State, 1957, 229 Miss. 824, 92 So.2d 194; Andre v. State, 5 Iowa 389, 68 Am.Dec. 708, although they are frequently used interchangeably by most courts and law-writers. State v. Sing, 1924, 114 Or. 267, 229 P. 921; Spain v. Rakestraw, 1909, 79 Kan. 758, 101 P. 466; Clarke v. State, 1935, 52 Ga.App. 254, 183 S.E. 92; People v. Van Gaasbeck, 1907, 189 N.Y. 408, 82 N.E. 718, 22 L.R.A.,N.S., 650. “Reputation” is evidence of “character.” Fine v. State, supra. It is the fact by which “character” is proved. Feibelman v. Manchester Fire Assur. Co., 1896, 108 Ala. 180, 19 So. 540. Indeed, it is the only competent evidence to prove character, poor though it may be.
Drunkenness or intoxication falls within the definition of habit. Among the cases holding that drunkenness or intoxication is a habit are Locke v. Brown, Fla.App.1967, 194 So.2d 45; New York Life Ins. Co. v. Hoffman, 1940, 238 Ala. 648, 193 So. 104; Powell v. Langford, 1941, 58 Ariz. 281, 119 P.2d 230; People v. Daniel, 1959, 168 Cal. App.2d Supp. 788, 337 P.2d 247; Licher v. Licher, 1919, 215 Ill.App. 441; Kennedy v. Crumley, 1962, 51 Tenn.App. 359, 367 S.W. 2d 797; McCarty v. Gappelberg, Tex.Civ. App.1954, 273 S.W.2d 943. Was appellant’s habit of drunkenness or intoxication admissible in evidence-against him in this case?
Appellant was charged under F.S.A. § 860.01, which, in part, provides that:
“ * * * if the death of any human being be caused by the operation of a motor vehicle by any person while intoxicated, such person shall be deemed guilty of manslaughter, and on conviction be punished as provided by existing law relating to manslaughter.”
*840 In Roddenberry v. State, 1942, 152 Fla. 197, 11 So.2d 582, the Supreme Court, speaking through Mr. Justice Thomas, said of this statute:
“The primary offense denounced by the statute is the operation of an automobile by an intoxicated person and there are different degrees of punishment which may be meted out to defendant dependent on the injury resulting to persons or property.”
Appellant’s intoxication was, therefore, a material issue in the cause.
In Williams v. State, Fla. 1959, 110 So.2d 654, 663, Mr. Justice Thornal, in an exhaustive opinion on the admissibility of evidence, said:
“[Ejvidence of any facts relevant to a material fact in issue except where the sole relevancy is character or propensity of the accused is admissible unless precluded by some specific rule of exclusion.” (Emphasis added.)
“Propensity” means “a tendency or disposition to commit the crime with which” the accused is charged. Mann v. State, 1886, 22 Fla. 600. Thus the challenged testimony does not relate to appellant’s “propensity” for driving an automobile while intoxicated, but to his “propensity” for becoming intoxicated. Neither does it relate to his character, but to one of his habits. Was this relevant to the issue of his intoxication at the specific -time in question ?
“Of the probative value of a person’s habit or custom, as showing the doing on a specific occasion of the act which is the subject of the habit or custom there can be no doubt. Every day’s experience and reasoning makes it clear. * * * ” 1 Wig-more on Evidence (3rd ed. 1940) 519. On the following page Dean Wigmore does point out the difficulty with habit evidence. He says:
“There is, however, much room for difference of opinion in concrete cases, owing chiefly to the indefiniteness of the notion of habit or custom. If we conceive it as involving an invariable regularity of action, there can be no doubt that this fixed sequence of acts tends strongly to show the occurrence of a given instance. But in ordinary affairs of life a habit or custom seldom has such an invariable regularity. Hence, it is easy to see why in a given instance something that may be loosely called habit or custom should be rejected, because it may not in fact have sufficient regularity to make it probable that it would be carried out in every instance, or in most instances.”
In the present case, however, we start out with the assumption of the jury’s inference from Laken’s testimony that appellant “was a habitual and long time user of alcoholic beverages,” and so we do not face the vexing question as to the sufficiency of the evidence to establish habit.
There are a number of cases in which the habit of drunkenness or intoxication has been held admissible in support of the issues in a case. Locke v. Brown, supra; Powell v. Langford, supra; Hardeman v. Georgia Power Co., 1931, 42 Ga.App. 435, 156 S.E. 642; Kennedy v. Crumley, supra. In addition to these cases, Smith v. People, 1892, 141 Ill. 447, 31 N.E. 425; League v. Ehmke, 1903, 120 Iowa 464, 94 N.W. 938; Keyser v. Damron, 1914, 159 Ky. 444, 167 S.W. 381; Sisson v. Lampert, 1910, 159 Mich. 509, 124 N.W. 513; Birkman v. Fahrenthold, 1908, 52 Tex.Civ.App. 335, 114 S.W. 428; hold the habit of drunkenness or intoxication is admissible in civil actions for furnishing intoxicating liquors to drunkards with knowledge of their habits.
There is, however, some authority limiting the admissibility of testimony concernng a party’s habit of intoxication, to the single purpose of corroborating the other evidence, in those instances where there is a conflict on the issue of his intoxication at the given time, Locke v. Brown, supra; McCarty v. Gappelberg, supra. The logic of such a rule is not apparent.
*841 Corroborating evidence is defined as evidence supplementary to that already given and tending to strengthen and confirm it, Smith v. Smith, 1958, 268 Ala. 348, 106 So. 2d 260; Gildersleeve v. Atkinson, 1891, 6 N.M. 250, 27 P. 477; State v. Lassiter, 1926, 191 N.C. 210, 131 S.E. 577; Varner’s Ex’rs v. White, 1927, 149 Va. 177, 140 S.E. 128: as additional evidence of a different character to the same point. Smith v. Smith, supra; Bell v. Bell, 1908, 15 Idaho 7, 96 P. 196; Hasselstrom v. McKusick, 1963, 324 F.2d 1013, 51 C.C.P.A. 1008. Evidence that is not competent as substantive evidence is not rendered competent simply because it tends to corroborate the other proof. State v. Lassiter, supra. It must be relevant.^
No text writer and no decisions of any court, except those above referred to, have announced a rule that corroborative evidence is only admissible where there is a conflict in the evidence. Hardeman v. Georgia Power Co., supra, cited in Locke v. Brown, supra, in support of this proposition does not so hold. Such a rule would ignore the principle iterated and reiterated in Locke v. Brown, supra, that “the test of admissibility is relevancy.”
It has been aptly said that the law furnishes no precise and universal test of relevancy, but that in each case the question must be determined according to the teaching of reason and judicial experience. Plumb v. Curtis, 1895, 66 Conn. 154, 33 A. 998. Generally speaking, one fact is relevant to another when, according to the common course of events, the existing one, taken alone or in connection with the other facts, renders the existence of the other certain or more probable. Locke v. Kraut, 1912, 85 Conn. 486, 83 A. 626. It is “enough” if the collateral fact may tend, even in a slight degree, to elucidate the injury, or to assist, though remotely, to a determination probably founded in truth. Mobley v. State, 1899, 41 Fla. 621, 26 So. 732. The testimony concerning appellant’s habit of intoxication was admissible on principle and precedent, unless precluded by some specific rule of exclusion not heretofore discussed.
It might be argued, in spite of the fact that “propensity” in Williams v. State, supra, refers to propensity for committing the identical crime with which the accused is charged, that the testimony is inadmissible as pointing to the commission of another crime. In Williams v. State, supra, 110 So.2d at 663 the court said:
“ * * * [E] vidence which has a reasonable tendency to establish the crime laid in the indictment is not inadmissible merely because it points to another crime. The question to be decided is not whether the evidence tends to point to another crime but rather whether it is relevant to the crime charged.”
In the same case at 658, the court said:
“ * * * With regard to similar fact evidence * * * those who would exclude it invoke the principles of undue prejudice, collateral issues and immateriality. In so doing it appears to us that they disregard the basic principle of the admissibility of all relevant evidence having probative value in establishing a material issue.”
The same principles would apply to the evidence here under consideration.
It might also be argued that habit evidence is subject to a different rule in criminal cases, but the principles are substantially the same in civil and criminal cases as to the admissibility of evidence. Wooldridge v. State, 1905, 49 Fla. 137, 38 So. 3. While no doubt there is a tendency to apply them more strictly in criminal than in civil cases, there is no alteration of the basic principles.
Even if Laken’s testimony be construed as relating to appellant’s character rather than to his habit of intoxication, or if it should be excluded under the rule in Locke v. Brown, supra, the reception of the testimony, under the circumstances of the case, was not harmful error. Under the “Orthodox” English rule the erroneous admission *842 of evidence was not sufficient ground for setting aside the verdict and ordering a new trial, unless upon all the evidence it appeared to the judges that the truth had thereby not been reached. This was the rule in both civil and criminal cases. 1 Wigmore, supra at 365.
In Crease v. Barrett, 1835, 1 C.M. & R. 919, the Court of Exchequer held, in effect, that an error in ruling created per se a right to a new trial for the excepting and defeated party. This was taken up by the English Courts and followed until it was abrogated by rule of Court in 1875.
In its most extreme form, the rule is that where error is shown harm will be presumed. Wigmore justly criticizes this rule, as making evidentiary rules ends in themselves, rather as means to the attaining of justice. 1 Wigmore, supra at 365, et seq.
The early cases in this state followed the “orthodox” rule. Among them are Randal v. Parramore, 1847, 1 Fla. 409; McKay v. Lane, 1853, 5 Fla. 268; Daggett v. Willey, 1855, 6 Fla. 482, and Hooker v. Johnson, 1860, 10 Fla. 198. In the latter case it was held that where the jury could and ought to have reached the conclusion it did, the verdict should not be disturbed.
Hooker v. Johnson, supra, was cited, and followed with approval, in Upchurch v. Mizell, 1905, 50 Fla. 456, 40 So. 29; Hopkins v. State, 1906, 52 Fla. 39, 42 So. 52; Jackson v. Citizens’ Bank & Trust Co., 1907, 53 Fla. 265, 44 So. 516; Disney v. State, 1916, 72 Fla. 492, 73 So. 598; Peterson v. State, 1925, 90 Fla. 361, 106 So. 75; O’Steen v. State, 1926, 92 Fla. 1062, 111 So. 725; and Prior v. Pounds, 1933, 113 Fla. 308, 151 So. 890. The language used by the Court in Hopkins v. State, supra, 42 So. at 55 is so apropos to the present case that I repeat it at the risk of being unduly prolix:
“The evidence leaves no room for reasonable doubt of Hopkins’ guilt. The jury could not have acquitted the defendant without disregarding their oaths. * * * Under these circumstances alleged errors in giving or refusing charges or instructions, and in the admission or rejection of testimony which do not weaken the effect of the admitted testimony or which do not reach the legality of the trial itself, should not be considered grounds for reversal.”
See also Mankowski v. State, Fla.1955, 83 So.2d 597. Both of these cases apply with equal force to the case under judgment.
The influence of the Exchequer rule upon the jurisprudence of this state was first manifested in Mayer Brothers v. Wilkins, 1896, 37 Fla. 244, 261, 19 So. 632, 637. The Court said, without citation of authority:
“Counsel for appellee insists that upon the entire record the judgment should be affirmed, notwithstanding some of the court’s ruling on the charges may not be strictly correct; but where error in the directions of the court is shown, injury is presumed, unless it affirmatively appear [sic] that such was not the case.” (Emphasis added.)
While the Court adopts the principle that error is harmful per se, it modifies the strict Exchequer rule to the extent of allowing the appellee to affirmatively show that the error was not harmful.
The next appearance of the Exchequer rule is in Southern Home Ins. Co. v. Putnal, 1909, 57 Fla. 199, 49 So. 922. The Court again affirmed “the principle that error having been clearly made to appear, injury must be presumed.” As may be seen from a reading of Mr. Justice Shackle-ford’s opinion, the force of this language is diminished, to some extent, by the qualified approval of the holding in McKay v. Lane, supra, and Hooker v. Johnson, supra. Of the cases cited in support of the “presumption of harm” rule, only Mayer Brothers v. Wilkins, supra, and Walker v. Parry, 1906, 51 Fla. 344, 40 So. 69, are in point, the others are, basically, in accord with the “orthodox” rule.
*843 A somewhat extensive research has disclosed no further mention of the “presumption of harm” rule until Griffith v. Shamrock Village, Fla.1957, 94 So.2d 854, which was followed in Hagan v. Knobloch, et ux., Fla.App.1966, 186 So.2d 525. It would appear that in both these cases the “orthodox” rule could have been applied with the same result. In any event these cases are outside the main stream, and have been impliedly overruled, as will be pointed out.
In 1911 the legislature of this state enacted a Harmless Error Statute — Chapter 6223, Laws of Florida, 1911, now F.S.A. § 54.23, which provides:
“No judgment shall be set aside or reversed, or new trial granted by any court of the State of Florida in any cause, civil or criminal, on the ground of misdirection of the jury or the improper admission or rejection of evidence or for error as to any matter of pleading or procedure, unless in the opinion of the court to which application is made, after an examination of the entire case it shall appear that the error complained of has resulted in a miscarriage of justice. This section shall be liberally construed.”
The obvious purpose of this statute is to abrogate the “Exchequer” rule. 1 Wig-more, supra at 373, points out that similar statutes were passed in other states, but generally proved ineffectual. Not so in this state, for the Supreme Court in O’Steen v. State, supra, approved our statute. It was also cited with approval in Fogler v. State, 1928, 96 Fla. 68, 117 So. 694, and in a long line of cases ending in Sonnenborn v. Gartrell, Fla. 1966, 189 So.2d 621, and Palmieri v. State, Fla.1967, 198 So.2d 633. The last mentioned cases, it will be noted, were decided some years subsequent to Griffith v. Shamrock Village, supra, and Hagan v. Knobloch, supra, and by implication overrules them.
In 1939, the legislature enacted the Criminal Code — Chapter 19554, Laws of Florida, 1939. Section 309 of this Act, now F.S.A. § 924.33, provides:
“No judgment shall be reversed unless the appellate court after an examination of all the appeal papers is of the opinion that error was committed which injuriously affected the substantial rights of the appellant. It shall not he presumed that error injuriously affected the substantial rights of the appellant.” (Emphasis added.)
This has been approved and followed in a line of many cases beginning with Kelly v. State, 1941, 145 Fla. 491, 199 So. 764, and including Armstrong v. State, Fla.App. 1965, 172 So.2d 6; Tanner v. State, Fla. App.1967, 197 So.2d 842; Palmieri v. State, supra. The error in Tanner’s case was certainly much more grievous than the alleged error in the instant case.
Under this statute, as construed by the decisions applying it, there must be a showing that the error resulted in actual prejudice to the rights of the accused. Armstrong v. State, supra. Salters v. State, 1943, 152 Fla. 284, 10 So.2d 809. The burden to make this showing is upon appellant. San Fratello v. State, Fla.App.1963, 154 So.2d 327; Peel v. State, Fla.App.1963, 154 So.2d 910. This is in accord with the decisions prior to the enactment of Section 309, Chapter 19554, Laws of Florida, 1939, now F.S.A. § 924.33. O’Steen v. State, supra.
An examination of the record establishes that the evidence of defendant’s guilt was clear, convincing, and uncontradicted, and leaves no reasonable doubt as to his guilt. The jury could have reached no other conclusion without violating their oath. The same result would have been reached without the questioned evidence, and its admission did not reach the legality of the trial. The appellant has not demonstrated that the admission of the evidence, if error, was harmful in any manner, and the judgment of the lower court should be affirmed, in keeping with the requirements of F.S.A. § 54.23 and § 924.33, and the de *844 cisions in Kelly v. State, supra; Roberts v. State, 1944, 154 Fla. 36, 16 So.2d 435; Fletcher v. State, Fla.1953, 65 So.2d 845; Mankowski v. State, supra; Albano v. State, Fla.1956, 89 So.2d 342; Conner v. State, Fla.1958, 106 So.2d 416; Urga v. State, Fla.App.1963, 155 So.2d 719. To do otherwise disregards the plain mandate of the Harmless Error Statutes, and conflicts with the decisions of the Supreme Court.