L. RAYMOND O'STEEN, *Plaintiff in Error*, v. THE STATE OF FLORIDA, *Defendant in Error*.

Division A.

Opinion Filed December 13, 1926.

Petition for Rehearing denied March 5, 1927.

1. The trial court properly refused, in a criminal case, to permit counsel for defendant to propound to the talesmen upon their *voir dire* examination the following question: ''Gentle-

men, if the defendant should take the witness stand in this case and testify in his own behalf, would you give his testimony the same consideration that you would give to the testimony of any other witness testifying in the case?"

2. Where, in a homicide case, the defendant sets up self-defense, the question of apprehension by the defendant of imminent danger to life or great bodily harm is for the jury, and the circumstances as they appear to the defendant must be such as would induce a reasonably prudent or cautious man to believe that the danger was actual and the necessity for taking life real.

A Writ of Error to the Circuit Court for Suwannee County; M. F. Horne, Judge.

*Edgar W. Waybright,* for Plaintiff in Error.

*J. B. Johnson,* Attorney General, and *Roy Campbell,* Assistant, for the State.

Brown, J.—The plaintiff in error was indicted for murder in the first degree and convicted of manslaughter, and sentence of five years imprisonment in the state penitentiary imposed. The case is brought before us on writ of error taken to this judgment of conviction.

Only two questions are presented by the assignments of error.

The first question is based upon the refusal of the court to permit counsel for plaintiff in error to propound to the talesmen upon their *voire dire* examination the following question: "Gentlemen, if the defendant should take the witness stand in this case and testify in his own behalf, would you give his testimony the same consideration that you would give to the testimony of any other witness testifying in the case?" If the court had permitted this ques-

tion to be propounded to the prospective jurors, it would have tended to create the impression upon their minds that it was their duty to give the same consideration and weight to the testimony of the defendant that they would accord to the testimony of any disinterested witness or witnesses whose testimony might be introduced upon the trial. While section 6080 of the Rev. Gen. Stats. makes the defendant a competent witness in his own behalf, if he desires to testify, it was not designed to have any such effect as that contended for by counsel for plaintiff in error. While he is thus made a competent witness in his own behalf, it is certainly within the province of the jury to consider his testimony in the light of the fact that he is the defendant and as such interested in the result of the trial. It was held by this Court in the case of Blanton v. State, 52 Fla. 12, 41 So. 789, that a charge is properly refused which is so framed as to tend to mislead the jury into the belief that they are bound to lend the same credence to the testimony of the accused as a witness on his own behalf, as to that of any disinterested witness. It was there said, in the opinion by Mr. Justice TAYLOR, "The interest that a witness has in the result of a suit the law recognizes as an element proper to be considered in weighing his testimony as affecting its credibility. Hampton v. State, 50 Fla. 55, 39 So. 421. The refused instruction is so framed as to mislead the jury into the idea that they must lend the same credence to the testimony of the accused as to that of any disinterested party, notwithstanding his deep interest in the result of the trial. Easterlin v. State, 43 Fla. 565, 31 So. 350." See also Robertson v. State, 64 Fla. 437, 60 So. 118.

The second question relates to the sufficiency of the evidence, counsel for plaintiff in error earnestly contending that the evidence in the case is not sufficient to sustain the verdict and that the court therefore erred in overruling the

motion for a new trial. After a careful consideration of all the testimony, which it would hardly subserve any good purpose to review in this opinion, we have reached the conclusion that this contention is not well founded.

It is especially insisted upon in behalf of plaintiff in error that the evidence shows that he acted in self-defense when he fired the fatal shot or shots. We are of the opinion that there were sufficient grounds in the testimony for the jury to have inferred that the circumstances attending the killing of the deceased were not sufficient to have induced a reasonably cautious man to believe that such killing was necessary in order to save his own life or to save himself from great personal injury. Smith v. State, 25 Fla. 517, 6 So. 482; Barnhill v. State, 56 Fla. 16, 48 So. 251. The rule laid down in Smith v. State, *supra,* has been followed in a long line of cases, one of the most recent being that of Ammons v. State, 88 Fla. 444, 102 So. 642, in which the holding of this court, as expressed in the third headnote, reads as follows: "In the prosecution of an indictment for murder where the defendant sets up the defense of self defense in that he was defending himself against an attack by the other to commit a felony and there was imminent danger of the design being accomplished, the question of apprehension by the defendant of danger is for the jury and the circumstances as they appear to the defendant must be such as would induce a reasonably prudent or cautious man to believe that the danger was actual and the necesity for taking life real."

Some of the reasoning underlying this rule is very well expressed in the text of 13 R. C. L., sec. 121, page 816, as follows: "The rule is universal that, to warrant taking life in self-defense, there must have been reasonable grounds for belief, upon the part of the slayer, that he was in imminent danger of loss of life, or of suffering

serious bodily harm at the hands of the person killed. The belief need be no more than reasonable, however, and if the slayer acts in good faith and with reasonable judgment and discretion, he will be excused, even though he err. If, however, his error is due to his own fault and negligence, no belief, however, honest, will excuse his act. If through carelessness or fright, or undue excitement, he takes the life of another, when it is not necessary, and when there is no reasonable ground to believe that it is necessary, he is not excused. Such an emotional state may go in mitigation of the offense and may reduce the grade from murder to manslaughter, but furnishes no complete justification or excuse for the taking of the life. * * * Whether reasonable grounds existed in any particular case is a question for the jury's determination.''

The record shows no reversible error and the judgment of conviction must therefore stand affirmed.

Affirmed.

ELLIS, C. J., AND STRUM, J., concur.

WHITFIELD, P. J., concurs in the opinion.

BUFORD, J., disqualified.

## ON REHEARING.

1. It is not incumbent upon the appellate court, upon rehearing, to consider assignments of error not argued upon the original hearing and hence abandoned by plaintiff in error.

2. When a defendant comes or is brought into court and files a formal plea of not guilty to an indictment, it will be presumed ·that he had been formally arraigned thereon or had waived formal arraignment, and his conviction will not be

reversed merely because the record does not expressly show a formal arraignment.

3. It is indispensable to the legal conviction of a defendant on trial for a felony that he should be personally present in court when arraigned, when tried, and when sentenced, and the record proper as distinguished from the bill of exceptions should show such personal presence; presence by attorney is not sufficient.

4. If so fundamental a right of the defendant be violated, it is the duty of his counsel to make due objection and exception thereto, and to see to it that the record brought up on writ of error affirmatively shows such absence of the defendant.

5. It has long been the general rule in this jurisdiction that this Court will not consider an assignment of error unless the action of the court below alleged as error affirmatively appears of record; and added emphasis would appear to have been added to this rule by enactment of the statute appearing as Sec. 2812, Rev. Gen. Stats.

6. It is a general rule of wide application that an appellate court will indulge all reasonable presumptions in favor of the correctness of the judgment or decree from which the appeal was taken. Error is never presumed on appeal, but the burden of showing error affirmatively is upon the appellant or plaintiff in error who alleges it, and the appellate court will not, for the purpose of finding reversible error, presume the existence of facts as to which the record is silent.

7. The plaintiff in error and his attorney are charged with the duty of bringing to the appellate court a correct and truthful transcript of the record in the trial court, and making it thereby to appear that the error, for the commission of which he asks that the verdict and judgment of the trial court be reversed, was committed by such court.

8. This jurisdiction has long been committed to what is known as the "Orthodox English Rule," to the effect that error when shown, in order to constitute reversible error, must appear to have been of such a character as to have been prejudicial and injurious in its tendency or effect upon the rights of the party complaining, rather than the "Exchequer Rule" to the effect that an error of ruling, whether harmful or not, creates *per se* for the excepting party a right to a new trial.

9. The record in this case examined and found to sufficiently show the arraignment of the plaintiff in error and his presence in person during the trial and when the verdict, judgment and sentence were respectively rendered and imposed.

10. Where, as in this case, the record shows that the defendant was present when his original sentence of imprisonment was imposed by the court, and, by an amendment to the record, it was shown that, on application of counsel for the defendant, the court later, during the same term, made an order *nunc pro tunc* changing and reducing the original sentence of imprisonment from six years and one day to five years, and instructing the clerk to correct the minutes of the judgment and sentence accordingly, which was done, it not affirmatively appearing from the record whether the defendant was or was not present at the time such change was made, no reversible error of which the defendant could complain appears.

Affirmed on rehearing.

*Edgar W. Waybright,* for Plaintiff in Error;

*J. B. Johnson,* Attorney General, and *Roy Campbell,* Assistant, for the State.

### ON REHEARING.

BROWN, J.—There is, in the original opinion in this case, an inadvertent error in the statement that: "Only two

questions are presented by the assignments of error.'' This statement should have read: ''Only two questions that are insisted upon are presented by the assignments of error.'' In his first brief, counsel for plaintiff in error stated that, ''The assignments are based solely upon the denial of the motion for new trial, and so our arguments will be confined to that motion.'' The plaintiff then argued only two questions; first, the question as to whether the court erred in refusing to permit a certain question to be presented to the talesmen upon their *voire dire* examination, and, second, whether the evidence was sufficient to sustain the verdict. These two questions were fully considered in the original opinion, and decided adversely to the contentions of the plaintiff in error.

The complete assignment of errors in this cause reads as follows:

''(1)   The court erred in overruling and denying defendant's motion for a new trial herein.

''(2)   The court erred in rendering judgment against the defendant.

''(3)   The court erred in passing sentence upon the defendant, to a term of five years in the state prison, when the defendant was not present.

''(4)   The court erred in changing the sentence from six years and one day to the sentence of five years in the state prison, at hard labor, in the absence of the defendant.''

The grounds for the motion for new trial were that the verdict was contrary to the evidence, contrary to the law, contrary to the law and the evidence, and not supported by the weight of evidence, and that the court erred in sustaining the objection to the question propounded by the defendant to the jurors on their *voire dire* examination, above referred to.

Since the granting of a rehearing herein, the plaintiff in error has filed a brief in which he not only re-argues the insufficiency of the evidence, but now argues the assignments of error which were not insisted upon in the original brief, and some additional points not expressly covered by the assignments of error, but which the plaintiff in error contends are all covered by the general assignment that, "The court erred in rendering judgment against the defendant."

It is hardly incumbent upon this court to consider the assignments of error which were not argued upon the original hearing, and which we might well treat as having been abandoned; but in view of the importance of this case to the plaintiff in error, as well as to the public, and the great earnestness with which these points are now argued, we will, as briefly as possible, treat them in the order in which they are referred to in the brief.

While the question of the sufficiency of the evidence is not briefly re-argued, nothing is called to the attention of this Court which was not argued and considered on the original hearing, and a careful consideration of the testimony convinces us more than ever of the correctness of our original holding in that regard.

As to the new matters: first, it is insisted that the record does not show any arraignment at all. This is true as to the original record filed in this court, but it does show that after the indictment, the defendant was arrested and made bond, and that, on May 15, 1925, "Defendant filed the foregoing plea: 'To which said indictment the defendant did then and there enter a plea of not guilty'." When the defendant comes or is brought into court and files a formal plea of not guilty to an indictment, it will be presumed that he had been formally arraigned on the indictment or that he had waived formal arraignment, and his

conviction will not be reversed and nullified merely because the record does not expressly show, under such circumstances, a formal arraignment of the defendant. Dixon v. State, 13 Fla. 631; Reed v. State, 16 Fla. 564; Bassett v. State, 44 Fla. 2, 33 So. 262. However, this Court has had certified to it by the clerk of the court below a record of the minute entries in this case, which show that on July 2, 1923, the defendant, being present in court, was duly arraigned and plead not guilty, and that the case was continued for the term upon his motion. This addition to the record further shows that the defendant was tried in November, 1923, when a mistrial was entered.

It is next insisted that the record does not show that the defendant was present in person during the trial of this cause. As a basis for this contention plaintiff in error calls attention to the entry in the transcript of the record in these words: "On the 16th day of May, 1925, at a term of said court, came the respective parties by their attorneys and submitted said cause, on issues joined between them, to a jury, who were duly sworn according to law, and who having heard the evidence, the charge of the court and argument of counsel, rendered the following verdict," etc. The record next shows the filing of a motion for new trial, setting the same out, and the ruling on such motion and the entry of judgment on the verdict. It is admitted that in the record of this ruling and judgment, it does appear that the defendant was in court in person at the time of such ruling and judgment.

It is contended in behalf of plaintiff in error that the language of the transcript, showing that at the time of the trial, "Came the respective parties by their attorneys and submitted said cause," etc., not only fails to show the personal presence of the defendant at the trial, but, *per contra,* would seem to negative his personal presence by the recital

to the effect that the respective parties came by their attorneys. In support of this contention, the case of Levett v. The State, 29 Fla. 356, 11 So. 172, decided at the January term, 1892, is cited. It was held in that case that it was indispensible to a legal conviction of a defendant on trial for murder that he should be personally present in court during the trial, and it is likewise indispensible that the record proper of the trial, as distinguished from the bill of exceptions, should show such personal presence; that presence by an attorney is not sufficient, and that presence at the time of the trial cannot be inferred from the express statement in the record proper of such presence at the time of the sentence, where the expression of the record as to the trial is, "came the said plaintiff and the said defendant by their respective attorneys," etc. The judgment in that case was reversed; but it will be observed that during the same term, it was shown to the court that the transcript was erroneous and that as a matter of fact the real record of the court below did show that the defendant personally participated in the trial; whereupon this Court vacated its entry of the judgment of reversal, and restored the case to the docket for further proceedings. See Lovett v. The State, 29 Fla. 384, 11 So. 176. It is undoubtedly the law that the defendant in a case of this nature should be personally present during his trial, and, where he is present, the record should so state. Certainly, if so fundamental a right of the defendant be violated, his counsel should make due objection and exception, and see to it that the record affirmatively shows that the defendant was not present. But under the law laid down in the Lovett case, and which is in line with the weight of authority up to that time, if the record be silent upon that point, not expressly showing whether he was present or absent, and the other entries in the record

proper did not afford a reasonable presumption of his presence at the trial, the verdict and judgment would be set aside. Yet the rule had been qualified to the extent, as recognized in the Lovett case, that it will be held sufficient if the presence of the defendant appears from the entire record by necessary and reasonable implication. One of the cases cited by Chief Justice RANEY in his opinion, Jeffries v. Commonwealth, 12 Allen 145, 154, held that where the record showed the personal presence of the defendant at the arraignment and at the sentence, it was held that it was not necessary that it should state in direct terms that the prisoner was present at the rendition of the verdict and during all the previous proceedings of the trial, although such presence was in fact essential. See also Irvin v. The State, 19 Fla. 872, and Brown v. The State, 29 Fla. 494, 11 So. 181, cited by Judge RANEY.

These cases were, however, all decided long prior to the enactment, in 1911, of what is known as the ''harmless error statute,'' now appearing as Section 2812 of the Rev. Gen. Stats. This statute provides that, ''No judgment shall be set aside or reversed * * * in any case, civil or criminal * * * for error as to any matter of pleading or procedure, unless in the opinion of the court to which application is made, after an examination of the entire case, it shall appear that the error complained of has resulted in a miscarriage of justice. This section shall be liberally construed.'' While not necessary to a decision of this cause, it would seem that a reasonable interpretation of this statute would be that the party complaining must make the error complained of to affirmatively appear to the appellate court by the record of the proceedings in the court below the judgment of which he is asking to have set aside and annulled. It has long been held in this jurisdiction that this Court will not consider an assignment of

error unless the action of the court below alleged as error affirmatively appears of record. Bryant v. The State, 34 Fla. 291, 16 So. 177; McNealy v. The State, 17 Fla. 198.

Although there are exceptions, such as that pointed out in the Lovett case, the general rule has long been to the following effect: "It is a general rule of wide application that an appellate court will indulge all reasonable presumptions in favor of the correctness of the judgment, order, or decree from which the appeal was taken. In other words it will be presumed on appeal, in the absence of a contrary showing, that the trial court acted correctly and did not err. Indeed error is never presumed on appeal, but must be affirmatively shown by the record; and the burden of so showing it is on the party alleging it, or, as sometimes stated, the burden of showing error affirmatively is upon appellant or plaintiff in error." 4 C. J., page 731, Sec. 2662. Again, on page 736 of the same work, it is said that the appellate court "will not, for the purpose of finding a reversible error, presume the existence of facts as to which the record is silent. Thus in support of the ruling or decision complained of, it will be presumed on appeal, as to matters not fully disclosed by the record, that public officials perform their duty; that statutory requirements were complied with," etc. Numerous decisions are cited in support of these propositions. See also 2 Encyc. Pldg. & Prac., 499 *et seq.* This general principle has been frequently upheld by this Court in both civil and criminal cases. Thus, in the case of Baker and Holmes Co. v. Indian River State Bank, 61 Fla. 106, 55 So. 836, it was held: "Upon a writ of error, the respective parties litigant are presumed to have had their day in court and to have had the points at issue between them fairly and impartially tried and determined in accordance with the law of the land. The final judgment rendered in the trial

court is presumed to be correct, and this presumption must be met in the appellate court and overcome by the plaintiff in error in order to obtain a reversal of such judgment.''

As a corollary to this rule, there is another rule almost universal in application to the effect that questions not raised and properly presented for review in the trial court will not be noticed on appeal, and *a fortiori*, where counsel declares on a trial in open court that only a certain question is involved in a case, or where by stipulation, a case is submitted only on a certain question, other questions cannot be raised in the appellate court. See in support of these propositions numerous cases cited in 3 C. J., pp. 689, *et seq*. This Court has recognized, as one exception to this general rule, that where it affirmatively appears from the record in a criminal case that there has been an error committed in the court below which is fundamental and jurisdictional, and which vitally affected the essential rights of the defendant, this court will in such extreme cases take notice of such departure from the fundamental requirements of the law, and take appropriate action with reference thereto, even in the absence of an assignment of error based thereon. Bynum v. State, 76 Fla. 618, 80 So. 572; Gunn v. State, 78 Fla. 599, 83 So. 511.

It is scarcely conceivable that any court in this state should proceed with the trial of any criminal case in the absence of the defendant, and still less conceivable that in such unlikely event such able counsel as those representing the defendant in this case should fail to take an exception to such a vital error and see to it that the record on appeal affirmatively showed such radical departure from the essential requirements of the law. As was held in the second Lovett case, 29 Fla., on page 403, ''The prisoner and his attorney are charged with the duty of bringing to the appellate court a correct and truthful transcript of the

record.'' The counsel of an appellant party is charged with the duty of bringing to the appellate court a transcript of the record of the inferior court; and, since the enactment of the statute now appearing as Section 2812 of the Rev. Gen. Stats., it would seem to be the duty of such appellant to make it appear from such record that the error, for the commission of which he asks that the verdict and judgment of the lower court be reversed and set aside, was actually committed by the court; and he should show that not only but by a long line of the decisions of this court it must also appear that such error, when shown, must be shown to be of such a character as to have been prejudicial and injurious in its tendency or effect upon the rights of the defendant. See Hooker v. Johnson, 10 Fla. 198; 4 C. J. 910, *et sep*; Southern Home Ins. Co. v. Putnal, 57 Fla., 199, 49 So. 922. This jurisdiction appears to have followed what is known as the ''orthodox English Rule,'' rather than the rule announced by the Court of Exchequer in 1830, the latter being that, ''an error of ruling creates *per se* for the excepting and defeated party a right to a new trial.'' This Exchequer rule that injury would always be presumed from error committed led to such absurd consequences that it was subsequently abolished in England by the Judicature Act of 1875, and the original rule restored, though not before such unwise rule had been adopted by many of the courts in this country, with disastrous effects. See an interesting discussion of this question in 1 Wigmore on Evidence, Sec. 21, and an able article by Justice William H. Thomas of the Supreme Court of Alabama, contained in the proceedings of the Alabama State Bar Association for 1907.

We are satisfied that there was no intention on the part of either of the able and distinguished counsel who represented this defendant in the court below, or in this court,

(counsel representing the defendant here not having par-
ticipated in the trial court), to omit from the record any
material matter, bearing on any of the questions raised, or
to mislead this court with reference thereto.   The written
directions to the clerk evince an intention that the entire
record in the court below should be presented in the tran-
script filed here.   But apparently by inadvertence such
transcript does not set out the entire record.   As above
stated, this court has had certified to it under the seal of
the clerk below the minute entries in this cause, and such
minute entries show, in addition to the arraignment before
the first trial, above referred to, that the defendant was
present in court in his own proper person, as well as accom-
panied by counsel, at the time the jury was empanelled and
sworn to try the issue joined, and the taking of testimony
begun, on May 15, 1925; that he was present in person in
court and accompanied by his counsel when the taking of
testimony was resumed and completed, and during the
argument of counsel and the charging of the jury by the
court, and the retiring of the jury for the purpose of con-
sidering their verdict, and that on the same date the jury
returned into court and rendered their verdict.   It had al-
ready been shown by the original transcript that the de-
fendant was personally present in court when, on May 20th,
the court overruled the motion for a new trial and entered
judgment on the verdict.   It therefore now affirmatively
appears from the record that the defendant was duly
arraigned and that he was present in person, as well as
accompanied by counsel, not only at the arraignment but
during the trial of the case.

It only remains to consider one other proposition advanced
by the counsel for plaintiff in error and argued for the first
time on this rehearing.  The original transcript showed that
the defendant was adjudged guilty and sentenced to five

years' imprisonment in the state prison, on May 20, 1925. As above shown, one of the assignments of error was to the effect that the court erred in passing sentence upon the defendant to a term of five years in the state prison when the defendant was not present, and another was that, "The court erred in changing the sentence from six years and one day to the sentence of five years in the state prison, at hard labor, in the absence of the defendant." The first of these assignments was manifestly untenable, as the original transcript showed the presence of the defendant at the time he was given the five-year sentence. The other assignment of error, regarding the change in the sentence from six years and one day to the sentence of five years, in the absence of the defendant, was not supported by the original record in any respect, such record being entirely silent as to any change in the sentence whatsoever. But counsel for plaintiff in error have had certified to this court an order *nunc pro tunc* made by the trial judge on December 18, 1926, correcting the original entry of judgment and sentence as shown by the transcript so as to show that the defendant was sentenced to be confined in the state prison at hard labor for six years and one day, and that (following the language of the order) : "Afterwards and during the same term of court counsel for the defendant requested that the sentence of the defendant be made five years instead of six years and one day as requested by the defendant at the time of the entry of the judgment so as to enable him to apply for pardon, and the Court did thereupon consider said request of the defendant's attorney and granted the same and the Clerk was instructed to so correct the minutes of the said judgment as to make it read that the defendant be imprisoned for five years instead of six years and one day, which was done by the clerk. Then and there making such change in his draft of his minutes on said

matter. I do not recall whether or not the defendant was present. Done and ordered this 18th day of December, A. D. 1926.''

This merely shows that during the same term the court, on the application of counsel for plaintiff in error, changed the sentence from six years and one day to five years and instructed the clerk to correct the minutes of the judgment so as to make it read five years instead of six years and one day, which was done by the clerk. If this be error, we do not see how it was harmful or prejudicial to the defendant or how the plaintiff in error can complain thereof, the same being in his favor, and procured upon the request of his counsel. The control of the court over its orders, judgments and minutes, during the terms at which they are rendered or recorded is practically plenary. Nor does it affirmatively appear that the defendant was not present at the time this change in the sentence was made. It is true, it is well settled that the defendant should be present at the time of his sentence or re-sentence, or at the time any change is made in the term of his sentence, where such sentence involves corporal punishment of any kind. But where the defendant through his counsel obtains a change in a sentence, during the same term at which it was rendered, such change subtracting from rather than adding to the punishment inflicted by the sentence as originally made, and it is not made to affirmatively appear that the defendant was not present at the time of such amelioration of the sentence, he is in no rightful position, and will not be allowed to take advantage of such action in his favor, brought about by his own counsel, as a ground for the reversal of the judgment and sentence.

Judgment affirmed on rehearing.

ELLIS, C. J., AND STRUM, J., AND CAMPBELL, CIRCUIT JUDGE, concur.

WHITFIELD, J., dissenting in part.

TERRELL, J., not participating.

BUFORD, J., disqualified.

WHITFIELD, J., dissenting in part.—The certified copies of the record of the proceedings in the trial court show that while the defendant was present when the sentence of six years and one day imprisonment was announced by the court, yet the defendant was apparently not present when afterwards and during the same term of the court, the judge at the request of defendant's counsel directed the clerk to correct the judgment in the minutes of the court so as to impose a sentence of imprisonment for five years. This was done at the instance of defendant's counsel and was of course favorable to the defendant; but he had a right to be present when the sentence was changed by the court, even though the change be beneficial to the defendant; and the absence of the defendant when the five year sentence was imposed having been made an assignment of error, though not argued in the first brief, such assignment was not so waived as to preclude the matter being now presented on a further transcript of the record permitted to be filed in a rehearing granted by this court upon the same writ of error. It is very doubtful if the harmless error statute (Sec. 2812 Rev. Gen. Stats. 1920) was intended to cover a matter like this, i. e. the absence of a defendant when the judgment is materially altered though the alteration be favorable to the defendant, the sentence being to the State Penitentiary for

a felony. See 16 C. J. 1292, 1314; Brown v. State, 29 Fla. 543, 10 South. Rep. 736; Sec. 6078 Rev. Gen. Stats. 1920.

If the defendant had been present when the sentence was changed, he might have presented matters that would have justified the court in adjudging either a shorter period of imprisonment in the penitentiary, or a sentence to imprisonment in the county jail or even in imposing a fine in lieu of imprisonment as the court was authorized to do under the statute. Sec. 5039, Rev. Gen. Stats. 1920.