137 So.2d 621 (1962)
Henry Frank BOWDEN, Appellant,
v.
STATE of Florida, Appellee.
No. 2354.
District Court of Appeal of Florida. Second District.
February 7, 1962.
*622 Edward C. Flood, Bartow, for appellant.
Richard W. Ervin, Atty. Gen., and Robert R. Crittenden, Asst. Atty. Gen., for appellee.
WHITE, Judge.
The appellant, as defendant below, was found and adjudged guilty of the crime of incest.[1] The principal point urged on appeal is that the trial court committed reversible error in refusing to order blood grouping tests sought by the defendant as evidence in the case.
The complaining witness was the unmarried nineteen year old daughter of the defendant. She testified that the defendant committed the acts as charged in the information and that he previously had engaged in such conduct toward her for three or four years. Her testimony was essentially corroborated by other members of the defendant's household.
The record discloses evidence of voluntary admissions against interest by the defendant during the interim between the preliminary hearing and the trial of the case. One of these was a statement in a letter to his wife. A number of witnesses attested the defendant's generally good reputation in the community of his residence. It was the opinion of these witnesses that the defendant would not have committed the offense with which he was charged.
The complaining witness had given birth to a child which was placed for adoption by a licensed child placement agency. While at Tampa Maternity Home she stated that a certain named person was the child's father. She later informed her pastor and the public authorities that the defendant, and not the person previously named, was in fact the father of the child. She testified on direct examination that she made the contradictory statements. Questioned further on direct examination as to why at first she had not identified the defendant as the father, she replied that it was hard to admit having the child but to tell that the defendant was the father [witness cried] " I can't tell it ."
Counsel for the defendant moved the court to order blood grouping tests of the complaining witness and her child and the defendant. The motion was denied. The defendant proffered expert testimony to show that in some cases nonpaternity may be established by blood test exclusion, that on average there would be a 10% to 20% chance that a particular person would be excluded as possible father of a particular child. The proffered testimony was rejected.
It was the theory of the defense that if blood grouping tests should exclude the paternity of the defendant, it would tend to impeach the veracity of the complaining *623 witness with respect to all her testimony; that this would be competent evidence and that the defendant was constitutionally entitled to compulsory process to obtain the tests and have the results admitted in evidence.
Florida has no statute purporting to authorize compulsory blood grouping tests for purposes of evidence in criminal cases. In this situation and in view of the child adoption restrictions, the court took the position that there was no authority of law to order the tests as requested. The court was also of the opinion that such tests were not essential to a fair trial of the case since the question of whether the defendant was father of the child was not the real issue, that a determination of that question would not settle the issue of the defendant's guilt or innocence of the offense charged in the information. The court said "if the guilt or innocence of the defendant depended on whether or not he was the father of that child, it might be, but that is not the case."
The law of evidence recognizes the validity of scientific blood analyses where relevant and material to the issues in litigation. Williams v. State, 1940, 143 Fla. 826, 197 So. 562; 20 Am.Jur., Evidence, § 352; Annotation 46 A.L.R.2d 1000, et seq. In disputed paternity cases, for example, an analyses of the blood of the child will indicate in a general way the blood types of its parents. When the blood types of the mother and supposed father are also known, the paternity of the alleged father is excluded if his blood type is such that it is genetically impossible for him and the mother to produce a child with the blood type of the child in question. From the affirmative standpoint, however, blood grouping tests will not operate to identify a particular person as the child's father but will show only that the father must have had blood of a certain type. 13 Fla.Jur., Evidence, § 170; 20 Am.Jur., Evidence, § 352; Annotation 46 A.L.R.2d 1000, 1002-1018.
We come now to consider whether a trial court in Florida has authority to order blood grouping tests in criminal cases and, if so, to what extent the exercise of the authority is discretionary. Statutes in some states expressly authorize the courts to order blood grouping tests generally or in particular proceedings. In states without specific statutes on the subject the decisions support the proposition that the power exists inherently and may be exercised within the sound discretion of the court. We accept this as the rule in Florida. In the following treatment, however, we include references to decisions in states having statutory authorization since the statutes may be regarded as largely declaratory of inherent authority. Annotation 46 A.L.R.2d 1000, 1005.
State v. Damm, 1936, 64 S.D. 309, 266 N.W. 667 exemplifies current judicial thought on compulsory blood tests in states having no statute on the subject. The Supreme Court of South Dakota, in an erudite and informative opinion, endorsed the validity of scientific blood testing and adopted the rule that a trial court has "inherent power, [with]in its reviewable discretion," to order the taking of blood tests where the court feels that such tests will likely promote the ascertainment of truth. Such compulsory testing, with appropriate safeguards, was deemed not violative of any constitutional right. The defendant in that case was charged with rape. It was held that the trial court's refusal to order tests as to the paternity of a child born to the complaining witness was not an abuse of discretion in the special circumstances of that case, even though the complaining witness had named the defendant as the father. See also State v. Bryant, 1948, 228 N.C. 641, 46 S.E.2d 847.
The New York courts have statutory authority to order blood grouping tests in criminal cases as well as in civil cases. The New York statute, like most of the statutes in other jurisdictions, contemplates the exercise of judicial discretion. N.Y. *624 Code Crim.Proc. § 684-a. The authority of the court was invoked in People v. Karlan, Co.Ct. 1939, 13 N.Y.S.2d 482, a case in which Joseph Karlan was charged with statutory rape. The complaining witness claimed that Karlan was the father of a child born to her. A motion for blood grouping tests was denied. The court noted that "at first glance" it would seem that the facts were such as contemplated by the statute. The court nevertheless concluded that the establishment of the parentage of the infant was not sufficiently relevant to the prime issue raised in the indictment. It should be observed that the reported decision does not disclose whether the tests were requested by the prosecution or by the defendant.
However, in the similar case of People v. Seeley, Co.Ct. 1948, 75 N.Y.S.2d 833, the defendant was the movant. It was held that serological blood testing to establish that the defendant was not the father of the complaining witness' child was not relevant and could not be required. The court after noting that there was "abundant authority for the proposition that pregnancy or the birth of a child is no evidence to corroborate testimony that the defendant is the guilty party * * *" went on to say:
"* * * Although there is no such substantial authority for the converse proposition, it is certainly logical and follows that pregnancy or the birth of a child could not acquit the defendant or substantiate his innocence of Rape in the Second Degree even if blood tests unequivocally showed that he could not be and was not the father. * * * The indictment does not charge that the infant involved herein became pregnant by reason of the alleged acts with which this defendant is charged." (Emphasis ours.)
It is contended in the instant case that the court's refusal to order tests and admit the results in evidence violated the defendant's rights under § 11 of the Declaration of Rights of the Constitution of Florida, F.S.A.,[2] and the due process clause of Amendment XIV to the Constitution of the United States.[3] It is urged that the court in effect denied the defendant his right to compulsory process for the procurement of witnesses to which he was implicitly entitled under the foregoing constitutional provisions.
In some cases the very nature of the charge or the development of the evidence makes the ultimate decision dependent upon a single factual issue. If that issue should be whether or not the defendant is the father of a certain child, a denial of blood grouping tests could critically prejudice the defendant. In such event the negative action of the court would likely constitute an abuse of discretion and a practical denial of due process of law. The present case is not in that category. Compare People v. Bynon, 1956, 146 Cal. App.2d 7, 303 P.2d 75; State v. Snyder, 1952, 157 Ohio St. 15, 104 N.E.2d 169. *625 In the cases just cited the guilt or innocence of the defendants necessarily hinged upon the issue of paternity and it was correctly held that the defendants were entitled to blood grouping tests.
We are unable in this case to equate the denial of compulsory blood grouping tests with a denial of the right to compulsory process for the attendance of witnesses or a denial of due process of law. Test results, whatever they might reflect, could not effectively refute the direct cumulative testimony of other witnesses on the crucial issue. The defendant's demand for group blood testing was therefore little more than a diversionary attempt to weaken a portion of the state's case with respect to a matter which was only collaterally relevant. The complaining witness admitted her contradictory statements and offered an explanation. The jury could have believed either version and reached the same verdict.
We conclude that where the complaining witness in a prosecution for incest admits prior contradictory statements in naming the defendant as the father of her child, it is not reversible error to deny the defendant's motion for compulsory blood grouping tests for impeachment purposes where the parentage of the child is not a determinative issue and there is competent testimony of other witnesses amply supporting the verdict of the jury.
Other assignments appearing in the record have been carefully examined. There may be minor errors in a few of the court's rulings adverse to the defendant, but they are clearly insufficient to justify a reversal of the judgment. A conviction will not be reversed for errors in rulings on the admissibility of evidence or in procedural matters generally, where the evidence of guilt is strong and no fundamental rights of the defendant were violated and it appears that such errors, if any, were not prejudicial to the defendant. Settles v. State, 1918, 75 Fla. 296, 78 So. 287; Seymour v. State, 1913, 66 Fla. 133, 63 So. 7; 32 Fla.Jur., Trial § 17.
This case was very ably presented by respective counsel, the trial was fairly conducted and no prejudicial error is made to appear.
Affirmed.
SHANNON, C.J., and SMITH, J., concur.
NOTES
[1] Section 741.22 F.S.A.
[2] Fla. Const. 1885, Decl. of Rights, § 11. "Rights of accused; speedy trial; etc. In all criminal prosecutions, the accused shall have the right to a speedy and public trial, by an impartial jury, in the county where the crime was committed, and shall be heard by himself, or counsel, or both, to demand the nature and cause of the accusation against him, to meet the witnesses against him face to face. and have compulsory process for the attendance of witnesses in his favor, and shall be furnished with a copy of the indictment against him." (Emphasis ours.)
[3] U.S.Const., Amend. XIV, § 1. "All persons born or naturalized in the United States, and subject to the jurisdiction thereof, are citizens of the United States and of the State wherein they reside. No State shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States; nor shall any State deprive any person of life, liberty, or property, without due process of law; nor deny to any person within its jurisdiction the equal protection of the laws." (Emphasis ours.)