155 So.2d 719 (1963)
Diamante URGA, Appellant,
v.
STATE of Florida, Appellee.
No. 3161.
District Court of Appeal of Florida. Second District.
May 10, 1963.
Rehearing Denied July 3, 1963.
Manuel M. Garcia and Wm. C. Pierce, Tampa, for appellant.
Richard W. Ervin, Atty. Gen., and James G. Mahorner, Asst. Atty. Gen., Tallahassee, for appellee.
WHITE, Judge.
Diamante Urga was convicted on an information charging her with performing *720 certain acts with intent to procure the miscarriage[1] of prosecuting witness Helen T. Christman.
The defendant appeals her conviction and challenges the correctness of the trial court's rulings which (1) permitted an examining doctor to testify to statements made by the prosecuting witness out of the presence of the defendant, (2) held that a sufficient predicate had been laid for medical testimony of a pathologist with reference to the analysis of a specimen, and (3) limited the cross examination of the prosecuting witness with reference to her past domestic relations. Under protested ruling (1) we accept the premise that it was error to admit the hearsay testimony of the doctor, but we find the error harmless. With respect to rulings (2) and (3), we find no error.
The defendant first contends that it was prejudicial error to admit hearsay testimony given by Dr. Henry L. Wright who had examined the prosecuting witness. Dr. Wright's testimony included his opinion that an abortion had been effected. He was permitted to testify to conversations with the prosecuting witness in which she related the details and consequences of incriminating acts allegedly undertaken and performed by the defendant. We are constrained to the view that such testimony in criminal cases is not admissible under any recognized exception to the hearsay rule. The objectionable hearsay was, however, entirely cumulative and repetitious of other testimony in the record. The prosecuting witness testified to the same effect, and her testimony in combination with other competent evidence convincingly supports the conclusion that the defendant did perform the acts in question with the described results. See Fla. Stat. § 54.23 F.S.A.;[2] Fla. Stat. § 924.33 F.S.A.[3] Cf. Sea Crest Corporation v. Burley, Fla. 1949, 38 So.2d 434.
In Sea Crest Corporation v. Burley, supra, a civil case, the Supreme Court of Florida held that certain testimony was erroneously admitted but was not harmful since the matters testified to were independently attested by other competent witnesses. Other Florida decisions relative to the same general principle in criminal cases include Smith v. State, 1937, 129 Fla. 388, 176 So. 506, 508; and Chesser v. State, 1923, 85 Fla. 151, 95 So. 610, where the testimony of the accused was held sufficient to sustain his conviction notwithstanding the admission of incompetent evidence adduced by prosecution. See also Kelly v. State, 1941, 145 Fla. 491, 199 So. 764, citing Hopkins v. State, 1906, 52 Fla. 39, 42 So. 52, 55 in which it was held:
"`Alleged errors in giving or refusing charges or instructions, and in the admission or rejection of testimony, which do not weaken the effect of the admitted testimony, and which do not reach the legality of the trial itself, will not be considered grounds for reversal where the evidence leaves no room for reasonable doubt of the defendant's guilt.'"
The present case differs significantly from Weightnovel v. State, 1903, 46 Fla. 1, *721 35 So. 856, on which the defendant strongly relies. That was a manslaughter case in which a statement made by the deceased to a physician out of the presence of the defendant was held erroneously admitted since no predicate had been laid for its admission as a dying declaration or as part of the res gestae. The conviction was reversed. In that case, however, the physician's testimony would have been essential to a conviction since the victim was dead and there was no other appreciable evidence linking the defendant with the alleged crime. In the instant case, by contrast, the physician's testimony as to statements by the prosecuting witness was not essential to conviction in view of the fact that the prosecuting witness herself gave competent testimony as to the very same facts.
Reverting to Dr. Wright's medical opinion that an abortion had been induced, we find that his opinion was supported by evidence other than the objectionable hearsay. He testified that his personal examination of the prosecuting witness disclosed excessive bleeding, infection and expansion indicating recent pregnancy. There was no error in permitting this testimony to stand.
Our courts generally have been careful to assure fair trials to defendants in criminal cases, but obviously there are some errors that do not render a trial basically unfair. Consequently the doctrine of "harmless error" has been developed by judicial decision and adopted by statute[4] to avoid reversal in cases where it appears that justice has been served and that in all probability a new trial with the same admissible evidence would not alter the end result. That is the situation here where the erroneous admission of Dr. Wright's hearsay testimony was not so grievous as to justify a new trial. Cf. Bowden v. State, Fla.App. 1962, 137 So.2d 621, 625; Breen v. State, 1922, 84 Fla. 518, 94 So. 383. For a brief and interesting commentary on the evolution of the harmless error doctrine see O'Steen v. State, 1927, 92 Fla. 1062, 111 So. 725, 729-730.
The defendant next contends that it was prejudicial error to permit Dr. Robert J. Davis, a pathologist, to testify to the results of his analysis of tissue purportedly taken from the body of the prosecuting witness to ascertain whether she had been pregnant. The defendant submits that the State's evidence did not establish that the specimen was taken from the prosecuting witness and did not show an unbroken chain of possession of the specimen from the time of the taking to the time of analysis.
It appears that Harriet Ward, a registered technician at St. Joseph's Hospital, assisted Dr. Frank Moorehead in taking a tissue specimen from the prosecuting witness. She testified that the specimen was placed in a container and sealed and that Helen Christman's name and age, the date, and the doctor's name were all inscribed on the container and that she took the specimen to the laboratory for analysis. She testified that she personally delivered the container to a girl in the laboratory, and that such was the customary procedure for handling specimens. Similar testimony was given by Dr. Frank Moorehead.
Dr. Robert J. Davis, pathologist in charge of the laboratory, testified that the various specimens come to him in sealed containers, that he gives them distinctive numbers which he enters in a session book corresponding to "their name" and then he examines each specimen and has it processed by his technician. Dr. Davis testified that he personally analyzed the specimen labeled "Helen Christman." At this point defense counsel objected on the ground that it appeared from the State's own evidence that there was no continuity of possession of the specimen. The objection was overruled. Continuing his testimony Dr. Davis stated that he personally removed the tissue from the container, examined it *722 and placed a portion of it in a slide container for microscopic examination marked with the number entered in his book, and that he analyzed it as "partly product of placental tissue." The presence of placental tissue would be indicative of recent pregnancy. On cross examination Dr. Davis testified that he did not personally participate in obtaining the specimen.
In Novak v. District of Columbia, 1947, 82 U.S.App.D.C. 95, 160 F.2d 588, cited by the defendant, Bernard Novak was convicted of driving an automobile while under the influence of intoxicating liquor. A police officer obtained a specimen from the defendant while he was under arrest. The defendant was not advised that this could be used as evidence against him, but he was told that if the sample was right it would be to his benefit. The defendant also was not advised that he could refuse to have the specimen taken. An expert witness testified that in his opinion the test showing 24 of 1% alcohol indicated that the defendant was intoxicated at the time of his arrest. In reversing judgment of conviction and remanding the cause for a new trial the court said:
"It is our holding that the laboratory records and the chemist's testimony respecting the analysis were not properly admissible in evidence because the District of Columbia failed sufficiently to identify the sample from which the analyses were made as being that sample taken from appellant. The police officer who secured the sample was present in court and testified to the manner in which he labeled the flask containing appellant's urine and how he placed his initials on the label. The chemist, when he testified, had beside him the bottle of urine on which he had made an analysis. But no effort was made to hand to the police officer, who was present in court, the bottle the chemist had used to see if he could identify it as the bottle he had labeled and initialed. There is missing a necessary link in the chain of identification." (Emphasis added)
It is apparent that the Novak holding is not authority for the proposition that every person who handles a specimen container is required to give testimony precedent to the admission in evidence of the analysis report. The case turned on the fact that the officer, who supposedly placed the specimen in the bottle, did not so testify. Thus there was no affirmative identification of the specimen or of the bottle in which it was deposited. This points up a vital difference. In the present case, by contrast, the testimony plainly established that the specimen was taken and was placed in a container, sealed, fully labeled and delivered to the laboratory pursuant to customary hospital procedure.
In the same jurisdiction which rendered the Novak decision there was a later case which, we think, is more pertinent to the instant case. In Robinson, etc. v. United States, 1960, 109 U.S.App.D.C. 22, 283 F.2d 508, certain articles of clothing belonging to the defendants, together with paint chips and other debris found at the scene of an alleged burglary, were forwarded by the police to the laboratory of the Federal Bureau of Investigation. Relying on the Novak case, the defendants contended that the government had failed to show a sufficient history of continuity of possession to justify acceptance of the articles as exhibits in evidence. Holding that the evidence of continuity of possession was "reasonably adequate, under the circumstances," the court said:
"* * * In the present case, the Government's showing of continuity of possession was reasonably adequate, under the circumstances, although not every person who might have had access to the exhibits was called to the stand. Little or nothing turned on the precise nature of the custody of the articles, since their identity and the results of the tests were proved by *723 clear and unchallenged testimony. That the appellants were in possession of property taken from the stolen safe was plainly established. The exhibits, in contrast to Novak, were far from being an essential part of the Government's case. No evidence was offered by the defense suggesting any laxity in the custodial or laboratory procedures of the Government, or any reason why the exhibits should be regarded as in any way untrustworthy. Appellants' contention must be rejected. See, generally, Pasadena Research Laboratories, Inc. v. United States, 9 Cir., 169 F.2d 375, certiorari denied 1948, 335 U.S. 853, 69 S.Ct. 83, 93 L.Ed. 401." (Emphasis supplied)
Another case cited by the defendant is Brown v. State, 1951, 156 Tex.Cr.R. 144, 240 S.W.2d 310. Brown was arrested for driving while intoxicated and was taken to a hospital where a nurse took a specimen of his blood to be analyzed for trial purposes. The nurse did not testify at the trial and the appellate court, on reviewing Brown's conviction, found that the evidence did not provide sufficient assurance that the specimen taken was the same specimen that was forwarded by a hospital physician to the Department of Public Safety for analysis. The judgment of conviction was reversed. The opinion in this Texas case cannot be properly evaluated without reviewing its analysis by the same judge in the subsequent case of Ray v. State, 1961, Tex.Cr.App., 343 S.W.2d 259.
In the latter Ray case the court pointed out that the specimen in the Brown case was marked only by the initial "N" and the last name "Brown," which was a common name; that "Brown" did not testify; that on the other hand, in the Ray case then under consideration, the defendant testified and stated that a specimen of his blood was taken and that he had requested it. The blood was extracted in the emergency room and taken to the laboratory where it was tested. It was identified by an attached report as "Blood of Jesse E. Ray" and the analysis report was admitted in evidence. Judgment of conviction was affirmed, thus demonstrating once again that circumstances alter cases.
From the foregoing treatment of this phase of the defendant's appeal, we conclude that the analysis report and relevant testimony of the examining pathologist were admissible. Identification and continuity of possession were sufficiently established, affording ample assurance of the authenticity of the specimen and the analysis. It is notable in this connection that although it was proper to cross examine thoroughly with reference to the analysis, proof of pregnancy of the prosecuting witness was not a matter of vital necessity to the State's case. This is so because pregnancy of the "victim" is not an essential component of the statutory offense charged in the information. See Urga v. State, 1944, 155 Fla. 86, 20 So.2d 685, 687; Eggart v. State, 1898, 40 Fla. 527, 25 So. 144, 149.
The defendant's final contention is that she was denied a fair trial in that the court unduly limited defense counsel's cross examination of the prosecuting witness. We find, however, that the trial court merely forestalled excessive cross examination as to immaterial or collateral matters which were diversionary and not in cross of matters brought out on direct examination. See Atlantic Coast Line R. Co. v. Crosby, 1907, 53 Fla. 400, 43 So. 318, 333 which states:
"* * * It is well settled in this court that a witness cannot be crossexamined as to any fact which is collateral or irrelevant to the issue, merely for the purpose of contradicting him by other evidence if he should deny it, thereby to discredit his testimony. Fields v. State, 46 Fla. 84, 35 South. 185, and authorities therein cited."
Inquiries concerning the former married life and divorce of the prosecuting witness were intended to question whether the *724 witness had been impregnated by a man other than her husband and whether she had given false testimony in her divorce proceeding. For impeachment purposes, the defendant intended to introduce certain testimony from the witness' divorce proceeding from which the following portion is pertinent:
Q. "And do you feel that you were a good wife toward the defendant?"
A. "Yes."
The alleged false testimony was the answer "Yes." This answer being directed to the subjective thoughts and feelings of the witness would not be susceptible of proof or disproof.
It is perhaps understandable that the defense, in the zeal of defensive cross examination, would attempt to weaken the State's case by insinuations and reflections on the character of the prosecuting witness to the point of suggesting or even establishing an illicit conception; but proper impeachment would be directed to the credibility of the witness rather than to former misconduct of a different category, and a proper predicate would be required. When prior actions of a witness, or of the accused, are not reasonably relevant and material to the pending charge against the accused, such actions may not be made the basis of proof for impeachment purposes. Cf. Gafford v. State, 1920, 79 Fla. 581, 84 So. 602; Wallace v. State, 1899, 41 Fla. 547, 26 So. 713, 722. See also Roberson v. State, 1898, 40 Fla. 509, 24 So. 474, 477 where the court restated the general rule that evidence of particular acts of misconduct cannot be introduced to impeach the credibility of a witness. We conclude that the trial court did not err in limiting the cross examination under these circumstances. To permit it to go further in the direction indicated would belabor the record with excessive innuendo and immateriality. See Atlantic Coast Line R. Co. v. Holliday, 1917, 73 Fla 269, 74 So. 479, 484.
A judgment of conviction is generally sustained on appeal unless the record reveals error so prejudicial to a fair trial as to impel a reversal. The instant trial was free of harmful error, so the verdict and judgment will not be disturbed.
Affirmed.
KANNER, Acting C.J., and HORTON, MALLORY, Associate Judge, concur.
NOTES
[1] Fla. Stat. § 797.01 F.S.A.
[2] "Harmless error; effect. No judgment shall be set aside or reversed, or new trial granted by any court of the State of Florida in any cause, civil or criminal, on the ground of misdirection of the jury or the improper admission or rejection of evidence or for error as to any matter of pleading or procedure, unless in the opinion of the court to which application is made, after an examination of the entire case it shall appear that the error complained of has resulted in a miscarriage of justice. This section shall be liberally construed."
[3] "When judgment not to be reversed or modified. No judgment shall be reversed unless the appellate court after an examination of all the appeal papers is of the opinion that error was committed which injuriously affected the substantial rights of the appellant. It shall not be presumed that error injuriously affected the substantial rights of the appellant."
[4] Fla. Stat. § 54.23 F.S.A., supra.